**FILED**

APR 2 5 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JACKSON L. MCGRADY, )
820 Bright Street )
Fredericksburg, Virginia 22401 )
Tel. # 540.371.3792 )
)
      Plaintiff )
)
v. )
)
DONALD C. WINTER )
Secretary of the Navy )
Washington, D.C. 20350-1000 )
)
  and )
)
DEPARTMENT OF THE NAVY )
Washington, D.C. 20350-1000 )
)
      Defendants )

CASE NUMBER 1:06CV00752
JUDGE: Gladys Kessler
DECK TYPE: FOIA/Privacy Act
DATE STAMP: 04/25/2006

## COMPLAINT

1. This is a civil action which asks the Court to: a) enjoin Defendants from withholding certain agency records and to order production of those records to the Plaintiff under 5 U.S.C. § 552 (The Freedom of Information Act).

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 10 U.S.C. § 1331. This court has personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B). This case presents a federal question pursuant to 5 U.S.C. § 552 which is the federal statute implementing the Freedom of Information Act (FOIA). Venue is proper in

1

this Court pursuant to 28 U.S.C. § 1391(e) because the Defendants, the U.S. Secretary of Navy and the Department of the Navy, reside in this District. Venue is also proper pursuant to 5 U.S.C. § 552(a)(4)(B).

3. Defendant issued a final decision on Plaintiff's FOIA request on February 23, 2006. Defendants' decision denied Plaintiff's FOIA request and indicated that Plaintiff could seek judicial review of the denial decision and Plaintiff is entitled to review of that decision pursuant to 5 U.S.C. § 552.

## PARTIES

4. Plaintiff is a citizen of the United States and currently resides in Fredericksburg, Virginia.

5. Defendant, the Honorable Donald C. Winter, is the Secretary of the Navy and is the named Defendant in his official capacity only. He is the proper defendant for causes of action seeking review of the Department of the Navy's denial of a FOIA request seeking documents that are under the control of the Department of the Navy. The United States Marine Corps is a component of the United States Department of the Navy. As such records maintained by the Marine Corps are considered to be under the control of the Department of the Navy.

## FACTUAL BACKGROUND

6. The Department of the Navy convenes regular selection boards under the authority of 10 U.S.C. § 611 to recommend Marine Corps officers for promotion to the next higher

grade.

7. In addition to regular selection boards convened under 10 U.S.C. § 611, the Secretary of the Navy is also authorized under 10 U.S.C. § 628 to convene Special Selection Boards to consider whether a particular officer should be promoted if the officer was, improperly, not considered by the regular selection board or if the regular selection board considered the officer in an unfair manner.

8. 10 U.S.C. § 628 requires that Special Selection Boards be convened under regulations prescribed by the Secretary of Defense. The Secretary of Defense has published regulations regarding the convening of special selection boards. The current implementing directive is identified as Department of Defense (DoD) Instruction 1320.11 (Special Selection Boards) and was issued on September 27, 2005. The predecessor to DoD Instruction 1320.11 was identified as DoD Directive 1320.11, which was published on May 6, 1996. Pursuant to the authority of 10 U.S.C. § 628(j), the Secretary of the Navy (SECNAV) also published an implementing instruction and is identified as Secretary of the Navy Instruction (SECNAVINST) 1401.1B (Special Selection Boards for Commissioned and Warrant Officers in the Navy and Marine Corps). The Marine Corps has also published an implementing instruction and is identified as Marine Corps Order (MCO) P 1400.31 (Marine Corps Promotions Manual).

9. Both DoD Instruction 1320.11 and DoD Directive 1320.11 require that the record of a person who was referred to a Special Selection Board be compared with a sampling of records of officers of the same competitive category who were and were not recommended for promotion. Both SECNAVINST 1401.1B and MCO P1400.31 echo this requirement. Per MCO P1400.31, the sampling of records is composed of the records of five officers

3

who were recommended for promotion by the regular selection board and five records of officers who were not recommended for promotion by the regular selection board.

10.     Performance evaluations are extremely important in making personnel decision as to whom to promote and assign to critical position assignments. An important component of determining whether a particular officer is recommended for promotion by a selection board is the officer's comparative assessment in relation to the officer's peers. Under the Marine Corps' current performance evaluation system this comparison is know as the "comparative assessment." Under the previous performance evaluation system it was know as "Value and Distribution" markings.

11.     The Marine Corps' current performance evaluation system was implemented in 1998. Under the current evaluation system an officer's performance is rated by his first level supervisor, known as a reporting senior, and a second level supervisor, known as a reviewing officer. The performance evaluation form allows for narrative comments. However, the form also requires both supervisors to mark the officer on an objective performance scale.

12.     The reporting senior is required to grade the officer on an alphabetical scale from A through H in 14 separate areas. Each time the reporting senior authors a performance evaluation, his markings are converted into a numerical score. This numerical score establishes the "reporting senior profile." As the reporting senior profile becomes more established, there will be a spread of scores. The spread of scores reflects the relative performance of the officers on whom the reporting senior has authored a performance evaluation. Low relative scores reflect lower performance as compared to the officer's peers. High relative scores reflect higher performance as compared to the officer's peers.

This is known as a "comparative assessment." The relative value of the comparative assessment is an important criterion in determining which officers will be selected for promotion.

13. The reviewing officer, the second level supervisor, is also required to mark officers on an objective scale from 1 (highest) to 8 (lowest) based on his view of the officer's relative performance compared against all of the other officers of the same grade on which the reviewing officer has ever made an assessment. Each time the reviewing officer authors a performance evaluation, his markings are converted into a numerical score. These marking establish the "reviewing officer's profile." As the reviewing officer profile becomes more established, there will be a spread of markings. These markings shows the number of officers ranked above and the number of officers ranked below a particular officer. The spread of markings reflects the relative performance of the officers on whom the reviewing officer has ever authored a performance evaluation. Low relative markings reflect lower performance as compared to the officer's peers. High relative markings reflect higher performance as compared to the officer's peers. This marking is another component of the "comparative assessment." The relative value of the comparative assessment is an important criterion in determining which officers will be selected for promotion.

14. Each time the reporting senior or reviewing officer authors a new performance evaluation, the relative value of all previous reports on officers of the same grade is affected. For this reason, the system is considered "dynamic."

15. Prior to 1998, the performance evaluation system was a "point in time" system. Under this system the reporting senior and reviewing officer rated all officers of the same

grade that were under their direct supervision at the time an evaluation was due under the implementing regulations. The officers were rated on a scale between unsatisfactory to outstanding. If the supervisors determined that more than one officer was outstanding the supervisors were required to assign numerical ratings showing which officer was considered best, second best, etc. This rating was known as Value and Distribution. Because this type of system was a "point in time" system, later reports written by the reporting senior or reviewing officer did not affect the value of previous reports. Value and Distribution markings are an important criterion in determining which officers will be selected for promotion.

16. Prior to being considered for promotion, Marine Corps officers are encouraged to see a career counselor. The career counselor can provide a range of advice to include an opinion as to the officer's competitiveness for promotion. A key component of this opinion is the officer's comparative assessment and his Value and Distribution markings. Assessment of an officer's comparative assessment and his Value and Distribution markings are easily obtainable from a document known as the Master Brief Sheet (MBS).

17. The MBS lists a wide variety of information. The MBS includes the comparative assessments of each supervisor and the officer's Value and Distribution markings.

18. On September 28, 2005, Plaintiff submitted a request, citing 5 U.S.C. § 552 (Freedom of Information Act (FOIA)), to Ms. Teresa Ross, the FOIA Head for Headquarters, U.S. Marine Corps. Plaintiff's FOIA request sought *appropriately redacted* copies of the following:

a.   Master Brief Sheets, under both the "old" and "new" fitness report systems, for the sampling of records required to be maintained by SECNAVINST 1401.1B, of the officers

who were recommended for promotion by the FY 2004 lieutenant colonel selection board;

b.  Master Brief Sheets, under both the "old" and "new" fitness report systems, for the sampling of records required to be maintained by SECNAVINST 1401.1B, of the officers who were not recommended for promotion by the FY 2004 lieutenant colonel selection board;

c.  Master Brief Sheets, under both the "old" and "new" fitness report systems, for the sampling of records required to be maintained by SECNAVINST 1401.1B, of the officers who were recommended for promotion by the FY 2005 lieutenant colonel selection board;

d.  Master Brief Sheets, under both the "old" and "new" fitness report systems, for the sampling of records required to be maintained by SECNAVINST 1401.1B, of the officers who were not recommended for promotion by the FY 2005 lieutenant colonel selection board.

19.  In Plaintiff's original request, he included an example of appropriately redacted copies of the requested documents so that the documents would only reflect the comparative assessment and Value and Distribution markings of those records that comprised the "sampling" contemplated by 10 U.S.C. § 628. Plaintiff's request did not seek any information that could be used to identify the name of the officer associated with a particular Master Brief Sheet (MBS). Based on the level of redaction suggested by the Plaintiff, there was no realistic possibility that the person to whom the MBS pertained could be identified. The request was assigned control number HQMC-200600007.

20.  The FOIA Head notified Plaintiff by letter dated October 5, 2005, that she would be unable to process the request in the timeframes contemplated by SECNAVINST 5720.42F (Department of the Navy FOIA Program). She indicated that Plaintiff could

7

consider the response an adverse determination that could be appealed based on timeliness. On October 13, 2005, Plaintiff filed an appeal of the denial with the Office of the Judge Advocate General, Department of the Navy, which is designated by SECNAVINST 5720.42F as the appellate authority. Prior to the issuance of a decision from the Appellate authority, the FOIA Head responded to Plaintiff's original request by letter dated November 17, 2005.

21.    The FOIA Head indicated that documents responsive to Plaintiff's FOIA request were identified and retrieved. However, release was denied. The FOIA Head indicated that the Promotions Branch, Manpower Management Division (MMPR) of Headquarters Marine Corps "determined that Master Brief sheets fall within the scope of selection board proceedings and therefore, pursuant to pursuant to 10 U.S.C. § 618(f), cannot be disclosed to any person not a member of the board." The FOIA Head invoked a (b)(3) exemption under the FOIA to deny Plaintiff's request.

22.    By letter dated January 4, 2006, Plaintiff filed an administrative appeal with the appellate authority. Plaintiff explained why denial of his request was improper as the redacted MBSs were not "proceedings" within the meaning of 10 U.S.C. § 618(f). By letter dated February 23, 2006, the appellate authority issued a final agency decision denying Plaintiff's FOIA request based on a (b)(3)(A) exemption. That decision indicated that Plaintiff could seek judicial review of the denial decision.

23.    When the Secretary of the Navy convenes a regular selection board he identifies a percentage of officers that may be recommended for promotion based on the number of officers that are considered to be "in zone" for promotion. Officers may also be recommended for promotion if they are "above zone". Officers can also be recommended

if they are "below zone".

24.   Marine Corps Bulletin 1400 lists all officers within the Marine Corps in lineal or rank order by grade, e.g. major, lieutenant colonel, etc.. Promotion "zones" are established based on the lineal list established by Marine Corps Bulletin 1400 by identifying the senior officer "in-zone" and the junior officer "in-zone". A "below zone" is also established by identifying the junior officer in the "below zone." The senior and junior officer that determine the above and below zones are identified in an administrative message. After the selection board has concluded its deliberations and the recommendations for promotion are approved, the names of those officers selected for promotion are published in another administrative message. By identifying those officers, using Marine Corps Bulletin 1400, which were considered for promotion and the Marine Administrative Message identifying those that were promoted, it can be determined which officers were not recommended for promotion.

25.   The fact of whether a selection board recommended a particular officer for promotion is publicly available. Marine Corps Bulletin 1400 as well as Marine Administrative Messages are publicly available and are posted on an official Marine Corps internet website.

26.   Marine Administrative Message 371/02 identified the junior and senior officers that defined the "in-zone" and "below zone" for the Fiscal Year (FY) 2004 Marine Corps lieutenant colonel selection board. All Navy (ALNAV) Administrative Message R 241543Z Feb 03 identifies the officers selected for promotion to the grade of lieutenant colonel based on the recommendation of FY 2004 lieutenant colonel selection board. This ALNAV is publicly available and is posted on an official Marine Corps internet website.

27.     Marine Administrative Message 332/03 identified the junior and senior officers that defined the "in-zone" and "below zone" for the Fiscal Year (FY) 2005 Marine Corps lieutenant colonel selection board. All Navy (ALNAV) Administrative Message R 062330Z Jan 04 identifies the officers selected for promotion to the grade of lieutenant colonel based on the recommendation of FY 2005 lieutenant colonel selection board. This ALNAV is publicly available and is posted on an official Marine Corps internet website.

28.     The redacted Master Brief Sheets (MBSs) sought by Plaintiff under the FOIA would not reveal whether the officer was or was not recommended for promotion by a particular selection board. The MBS would not reveal a particular board member's recommendation as to whether to recommend promotion of a particular officer. The MBS would not reveal any of the discussions among the board members on whether to select a particular officer for promotion. The MBS would not reveal the procedures used by the board members to make their selection decisions. The MBS would not reveal any procedures implemented by the board to govern its internal conduct.

29.     The identity of the selection board members is made publicly available at the conclusion of the board's proceedings. Defendants publish detailed statistics concerning the make-up of those selected for promotion to include the educational background, race/ethic profile, commissioning source, occupational specialty, and whether the officer has served in a joint billet.

30.     The sampling of records of records contemplated by 10 U.S.C § 628 is intended as a proxy for all the records that were before a particular selection board. Release of MBS containing only the comparative assessments and the Value and Distribution markings of the sampling, will provide insight into how Defendants fulfill the authority granted to them

10

under 10 U.S.C. § 611. Marine Corps career counselors routinely cite to an officer's comparative assessments and Value and Distribution markings as one of the key aspects as to whether a particular record is competitive for promotion. Providing the requested documentation will allow observers to more directly understand the impact of these numbers without the subjective assessment of the career counselors.

31. Release of the MBS containing only the comparative assessments and the Value and Distribution markings of the sampling, will provide insight into whether and how Defendants are fulfilling their responsibilities under 10 U.S.C. § 628.

## COUNT I
(Failure to Provide Documents in Response to FOIA Request)

32. The allegations contained in paragraphs 1 through 32 are incorporated herein by reference.

33. A Court of the United States may review a determination by the Defendants to withhold information that is responsive to a request made under 5 U.S.C. § 552. The Court may set aside the Defendant's determination if the Court finds the records are not approrpaitely withheld under any of the exemptions set forth in 5 U.S.C. § 552(b). The redacted MBS requested by Plaintiff are not "proceedings" within the meaning of 10 U.S.C. § 618 and Defendants withholding of the documents pursuant to 5 U.S.C. § 552(b)(3) is improper. No other enumerated exemptions apply that would warrant withholding of the requested documents from Plaintiff.

## Requested Relief

WHEREFORE, Plaintiff prays that this Court

a. Enjoin Defendants from withholding the redacted Master Brief Sheets, as identified in

11

paragraph 18 of this Complaint, of the records comprising the sampling required to be maintained pursuant to 10 U.S.C. § 628, SECNAVINST 1401.1B, and MCO P1400.31;

b. Order production of those redacted documents to the Plaintiff under 5 U.S.C. § 552;

c. Order other equitable and statutory relief that this Court deems appropriate;

d. Award to plaintiff, against defendants, payment of all costs incurred in this action.

Respectfully submitted,

J. L. McGrady
Plaintiff, *Pro Se*
820 Bright Street
Fredericksburg, Virginia 22401
540.371.3792