# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **JACKSON L. MCGRADY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06-0752(GK)** |
| | ) | |
| **DONALD C. WINTER, Secretary of the Navy,** | ) | |
| **and** | ) | |
| **DEPARTMENT OF THE NAVY,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

This case arose under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and

pertains to the processing of plaintiff *pro se*'s FOIA request to the Department of the Navy,

specifically, the Commandant of the Marine Corps ("CMC"). In plaintiff's request, he sought

copies of the Master Brief Sheet sampling, maintained pursuant to 10 U.S.C. § 628, for the

Lieutenant Colonel Selection Board for Fiscal Years 2004 and 2005. He also sought the precepts

for these boards. See Complaint ¶ 18. In response to this request, defendants provided plaintiff

with the information to obtain the requested precepts. However, defendants determined that the

Master Brief Sheets and the Master Brief Sheet Samplings were exempt from disclosure pursuant

to Freedom of Information Act Exemption (b)(3)(A) and 10 U.S.C. § 618(f), and the documents

were withheld from plaintiff in their entirety. In his Cross-Motion for Summary Judgment,

plaintiff argues that defendants have not demonstrated that the Master Brief Sheets fall within the

claimed exemption.  <u>See</u> Plaintiff's Cross-Motion for Summary Judgment at p. 5.  Plaintiff also

argues that no other FOIA exemptions are applicable.  <u>See</u> <u>id</u>.  Plaintiff is incorrect.

## II.  LEGAL STANDARD

### A.  <u>Standard for Summary Judgment</u>

Where no genuine dispute exists as to any material fact, summary judgment is required.

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986).  A genuine issue of material fact is one

that would change the outcome of the litigation.  <u>Id</u>. at 247.  "The burden on the moving party

may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence

of evidence to support the non-moving party's case."  <u>Sweats Fashions, Inc. v. Pannill Knitting

Co., Inc.</u>, 833 F.2d 1560, 1563 (Fed. Cir. 1987).

Once the moving party has met its burden, the non-movant may not rest on mere

allegations, but must instead proffer specific facts showing that a genuine issue exists for trial.

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  Thus, to avoid

summary judgment, the plaintiff must present some objective evidence that would enable the

court to find he is entitled to relief.  In <u>Celotex Corp. v. Catrett</u>, the Supreme Court held that, in

responding to a proper motion for summary judgment, the party who bears the burden of proof on

an issue at trial must "make a sufficient showing on an essential element of [his] case" to

establish a genuine dispute.  477 U.S. 317, 322-23 (1986).

In <u>Anderson</u> the Supreme Court explained under what circumstances summary judgment

is appropriate:

> If the evidence is merely colorable, . . . or is not significantly
> probative, . . . summary judgment may be granted . . . [T]he mere
> existence of a scintilla of evidence in support of the Plaintiff's

> position will be insufficient; there must be evidence on which the
> jury could reasonably find for the Plaintiff.

Anderson, 477 U.S. at 252; see also Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987)

(non-moving party is "required to provide evidence that would permit a reasonable jury to find"

in its favor). In Celotex, the Supreme Court further instructed that the "[s]ummary judgment

procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral

part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and

inexpensive determination of every action.'" 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

The summary judgment standards set forth above also apply to FOIA cases, which are

typically decided on motions for summary judgment.[1] See Cappabianca v. Comm'r, U.S.

Customs Serv., 847 F.Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly

identified, FOIA cases should be handled on motions for summary judgment") (citing Miscavige

v. U.S. Internal Revenue Serv., 2 F.3d 366, 368 (11th Cir. 1993)). In a FOIA case, an agency is

entitled to summary judgment once it demonstrates that no material facts are in dispute, and that

each document that falls within the class requested either has been produced, not withheld, is

unidentifiable, or is exempt from disclosure. Students Against Genocide v. U.S. Dep't of State,

257 F.3d 828, 833 (D.C. Cir. 2001); Weisberg v. U.S. Dep't of Justice, 627 F.2d 365, 368 (D.C.

Cir. 1980).

An agency satisfies the summary judgment requirements in a FOIA case by providing the

Court and the plaintiff with affidavits or declarations and other evidence which show that the

---

[1]For purposes of summary judgment, an agency's decision to withhold information from a
FOIA requester is subject to de novo review by the courts. Hayden v. Nat'l Security Agency, 608
F.2d 1381, 1384 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980).

documents are exempt from disclosure.  Hayden  v. Nat'l Security Agency, 608 F.2d 1381, 1386 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980); Church of Scientology v. U.S. Dep't of Army, 611 F.2d 738, 742 (9th Cir. 1980).  Summary judgment may be awarded to an agency in a FOIA case solely on the basis of agency affidavits [or declarations] "when the affidavits describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" Trans Union, LLC v. U.S. Fed. Trade Comm'n, 141 F. Supp. 2d 62, 67 (D.D.C. 2001) (quoting Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981)); see also McGhee v. U.S. Central Intelligence Agency, 697 F.2d 1095, 1102 (D.C. Cir. 1983); Citizens Comm. on Human Rights v. FDA, 45 F.3d 1325, 1329 (9th Cir. 1995).  When the pleadings, supplemented by affidavits or declarations, show no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law, summary judgment should be granted to the defendant. Perry v. Block, 684 F.2d 121 (D.C. Cir. 1982).

**B.  Defendant Has Submitted a Vaughn Declaration.**

In moving for summary judgment in a FOIA case, an agency must establish a proper basis for its withholding of responsive documents.  "In response to this special aspect of summary judgment in the FOIA context, agencies regularly submit affidavits . . . in support of their motions for summary judgment against FOIA plaintiffs." Judicial Watch v. U.S. Dep't of Health and Human Services, 27 F. Supp. 2d 240, 242 (D.D.C. 1998).  The declaration or affidavit (singly or collectively) is often referred to as a Vaughn index, after the case of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974).  There is no set formula for a

Vaughn index. "[I]t is well established that the critical elements of the Vaughn index lie in its function, and not in its form." Kay v. U.S. Fed. Comm. Comm'n, 976 F.Supp. 23, 35 (D.D.C. 1997), aff'd 172 F.3d 919 (D.C. Cir. 1998). "The materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege." Delaney, Midgail & Young, Chartered v. IRS, 826 F.2d 124, 128 (D.C. Cir. 1987). See also Keys v. U.S. Dep't of Justice, 830 F.2d 337, 349 (D.C. Cir. 1987); Hinton v. U.S. Dep't of Justice, 844 F.2d 126, 129 (3d Cir. 1988). "All that is required, and that is the least that is required, is that the requester and the trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure." Id. at 128. The specificity of itemization needed depends upon the nature of the document and the exemption asserted. Info. Acquisition Corp. v. U.S. Dep't of Justice, 444 F.Supp. 458, 462 (D.D.C. 1978).

The Vaughn Index serves a threefold purpose: (1) it identifies each document withheld; (2) it states the statutory exemption claimed; and (3) it explains how disclosure would damage the interests protected by the claimed exemption. See Citizens Comm. on Human Rights, 45 F.3d at 1325. "Of course the explanation of the exemption claim and the descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under FOIA." Founding Church of Scientology v. Bell, 603 F.2d 945, 949 (D.C. Cir. 1979).

Defendant's have submitted a Vaughn Declaration in support of this opposition to Plaintiff's Cross-Motion for Summary Judgment. The Declaration was prepared by Lawson R.

Almand, Captain, Judge Advocate General's Corps, United States Navy, presently on active duty

and serving as Deputy Assistant Judge Advocate General (General Litigation), Office of the

Judge Advocate General.  See Defendant's Motion for Summary Judgment, Almand Decl. ¶ 1.

Captain Almand reviewed the Complaint in this case, and is familiar with the Department of the

Navy's processing of plaintiff's FOIA request through administrative appeal.  Almand Decl. ¶ 3.

### III.  ARGUMENT

#### A.  **Background Information**

##### 1.  Master Brief Sheets and Selection Boards

Title 10, United States Code, Section 611(a) provides that:

> whenever the needs of the service require, the Secretary of the military department
> concerned shall convene selection boards to recommend for promotion to the next
> higher permanent grade, . . . officers on the active-duty list in each permanent
> grade from first lieutenant through brigadier general in the Army, Air Force, or
> Marine Corps and from lieutenant (junior grade) through rear admiral (lower half)
> in the Navy . . . .

Selection Boards are appointed by the Secretary of the military department concerned . . . ."  10

U.S.C. § 612(a)(1).  They "consist of five or more officers of the same armed force as the officers

under consideration by the board."  Id.  In order to determine whether an eligible officer should

be promoted, the members of the selection board are provided with certain materials.  These

materials include the precept, i.e., the specific instructions given to the selection board regarding

how the selection board shall be conducted, as well as the substantive information to be

considered by the board.  See Defendant's Motion for Summary Judgment, Almand Decl.,

Attachment M (Secretary of the Navy Instruction 1420.1B) ("SECNAVINST").  This substantive

information includes each eligible officer's military personnel file and his or her Master Brief

Sheet.  See id. at 1420.1B ¶ 13(d)(1)); Attachment N (Marine Corps Order (MCO) P1400.31B ¶ 3001(1)(a), (2)(c)).

Master Brief Sheets are available for each officer in the Marine Corps.[2]  They provide key personnel data and a summary of an officer's entire performance evaluation record.  Id. at ¶ 4 n.1.  The Master Brief Sheets also contain the individual officer's Value Distribution Markings[3] and Comparative Assessments.[4]  See Attachment W at ¶ 7008 and Appendix K at ¶ 6 and Attachment X at Appendix G ¶¶ (C) - (E); see also Defendant's Motion for Summary Judgment, Almand Decl., Attachment C (two sample Master Brief Sheets are attached to Plaintiff's request).  Both the Value Distribution Markings and the Comparative Assessments are analyzed by the selection board when determining which officers should be selected for promotion.  Defendant's Motion for Summary Judgment, Almand Decl., Attachment H ¶ 2.  The members of the selection board consider, debate, and weigh the relative importance of the information on the Master Brief Sheets, and in the personnel files, to make the promotion recommendations.  To aid the selection board in its evaluation and selection of officers, a database known as the Digital Boardroom is used.  The Digital Boardroom contains an electronic record of the selection board proceedings.  See id. at ¶ 7.  Upon completion of the deliberations, the promotion recommendations of the

_____

[2]Master Brief Sheets are generated from a system of records called the Optical Digital Imaging Records Management System ("ODIRMS").  See Defendant's Motion for Summary Judgment, Almand Decl., Attachment H ¶¶ 2, 7.  Officers have access to their own Master Brief Sheets using this system.

[3]Value Distribution Markings are obtained when an officer is rated on a scale from unsatisfactory to outstanding by a reviewing officer.  See Attachment W at Appendix K at ¶ 6.

[4]Comparative Assessments are obtained when a reporting senior grades an officer on an alphabetical scale in comparison to other officers the reporting senior has graded.  See Attachment X at Appendix G ¶ D.

selection board are forwarded to the Secretary of the Navy.  See 10 U.S.C. § 617(a).  The

Secretary adopts or modifies the list and forwards it to the Chairman of the Joint Chiefs of Staff

and the Secretary of the Defense.  See 10 U.S.C. § 618(b), (c).  The list is then forwarded to the

President who makes the ultimate appointments.  Id.

> Pursuant to 10 U.S.C. § 618(f):
>
> except as authorized or required by this section, proceedings of a selection board convened under section 611(a) of this title may not be disclosed to any person not a member of the board.

This is because "[f]ree, uninhibited, and candid deliberations by selection boards are . . . vital to

the effective functioning of the selection board process . . . ."  In re: England, Secretary of the

Navy, et al., 375 F.3d 1169, 1176 (D.C. Cir. 2004)(citing Declaration of Gordon R. England ¶ 9).

"Navy regulations also require all selection board members to take an oath to 'not divulge the

proceedings of th[e] board except as authorized or required by the Secretary of the Navy or

higher authority.'"  Id. at 1173.[5]

## 2. Sampled Master Brief Sheets

At the conclusion of the selection board proceedings, the president of the selection board

engages in an additional procedure.  Using the Digital Boardroom, the president reviews the

Official Military Personnel Files ("OMFPs") and Master Brief Sheets of all the officers who were

considered for promotion.  He then chooses a select group or "sampling" of the OMPFs and

Master Brief Sheets of the officers who were selected for promotion, and a "sampling" of the

_____

[5]The bar to the disclosure of selection board proceedings was an established practice. Upon its enactment, Section 618(f) codified that practice.  Id. (citing Brenner v. United States, 202 Ct. Cl. 678, 686 (Ct.Cl. 1973)("The proceedings of selection boards are secret.")(Navy)(additional citations omitted).

OMPFs and Master Brief Sheets of the officers who were not selected for promotion. These samplings are chosen by the president because he has determined that they are most representative of the board's deliberations and recommendations. See Attachment V (McWaters Decl. ¶ 6).

These chosen samplings are then forwarded to the Commandant of the Marine Corps. See Defendant's Motion for Summary Judgment, Almand Decl., Attachment H, ¶ 7. The samplings are immediately transferred to a separate electronic database called PermStore. See id, ¶¶ 2, 3, 5. Because of the mandated confidentiality of the selection board proceedings, this is a limited access database. Id. ¶ 6. Only one office of the Marine Corps, the Manpower Management Support Branch, has access to this database. See id. ¶ 3. These data to populate the Master Brief Sheets are maintained in this database for seven years and are unchanged. See id. ¶ 6; see also Attachment S, ¶ 9.

If the Secretary of the Navy determines that there has been an administrative error or material unfairness in a selection board proceeding, the Secretary may convene a Special Selection Board. 10 U.S.C. § 1628(a), (b). See Attachment S (MCO P1400.31B, ¶ 5004). Only at this time is the PermStore database containing the sampled Master Brief Sheets accessed. See Defendant's Motion for Summary Judgment, Almand Decl., Attachment H, ¶ 7. In addition, with the exception of the custodians of these records, only members of the Special Selection Board may view these sampled Master Brief Sheets. See id. During the Special Selection Board proceedings, the records of the individual being considered are compared with the stored sampling of the Master Brief Sheets of "officers of the same competitive category who were recommended . . . and . . . not recommended for promotion." 10 U.S.C. § 626(a)(20, (b)(2); see

Attachment S (MCO P 1400.31B, ¶ 5004).

These sampled Master Brief Sheets provide the Special Selection Board with "a relative base [which indicates] which eligible officers, in the opinion of a majority of the members of the board, [were] fully qualified for promotion . . . ."  Attachment P (SECNAVINST 1401.1B ¶ 12.b. (25 Apr. 1997)); see also id. at ¶ 9 ("The sampling of records shall enable a special selection board to evaluate an officer's records . . . .")  In this way, the sampled Master Brief Sheets allow the Special Selection Board to gain insight into the deliberations and decision-making process of the original selection board, and attempt to accurately replicate that decision-making process when considering this special candidate.

### 3.  Plaintiff's Freedom of Information Act Request

In plaintiff's Freedom of Information Act request, he does not seek copies of the Master Brief Sheets maintained in the general system of records for all of the officers in the Marine Corps.  Plaintiff also does not seek the Master Brief Sheets for all of the officers who were promoted or not promoted.  Rather, plaintiff seeks the *sampling* of the Master Brief Sheets from the Lieutenant Colonel Selection Boards for Fiscal Years 2004 and 2005.  See Complaint ¶ 18. These samplings are only available in the confidential PermStore database.  Plaintiff contends that certain information can be redacted from the sampled Master Brief Sheets so that he can have access to the specific fields of private data he seeks.  See id.  However, whether or not the information can be redacted, plaintiff should not have access to the desired records for three primary reasons.  First, any Master Brief Sheets considered by a selection board and sampled Master Brief Sheets are part of the deliberative process of the members of the selection board, and are protected from disclosure by Freedom of Information Act Exemption (b)(5).  Second, any

Master Brief Sheets considered by a selection board and sampled Master Brief Sheets are part of

the proceedings of the selection board, and are protected from disclosure by Freedom of

Information Act Exemption (b)(3) and 10 U.S.C. § 618(f).  Third, Master Brief Sheets pertaining

to third parties and sampled Master Brief Sheets are protected from disclosure by Freedom of

Information Act Exemption (b)(6).

### B.  The Deliberative Process Privilege

Freedom of Information Act Exemption 5 (hereinafter "Exemption 5") incorporates the

deliberative process privilege.  See 5 U.S.C. § 552(b)(5).[6]  Also known as the 'executive' or

'governmental' privilege, the deliberative process privilege serves many purposes."  Eugene

Burger Mgmt. Corp. v. U.S. Dep't of Housing and Urban Dev., 192 F.R.D. 1, 4 (D.D.C. 1999)

The main purpose of this privilege "which is well established in the law, is . . . to 'prevent injury

to the quality of agency decisions.'" Cofield, et al. v. City of LaGrange, Georgia, 913 F.Supp.

608, 615 (D.D.C. 1996) (quoting Nat'l Labor Relations Bd. v. Sears, Roebuck & Co., 421 U.S.

132, 151 (1974).  DOI v. Klamath Waters Users Protective Ass'n, 532 U.S. 1, 8-9 (2001)("The

object of the deliberative process privilege "is to enhance the quality of agency decisions by

protecting open and frank discussions among those who make them within the Government.").

The deliberative process privilege prevents such injury by shielding the opinions, conclusions

---

[6] Plaintiff's attempt to argue waiver of other FOIA exemptions is contrary to District of
Columbia law.  See Plaintiff's Cross-Motion for Summary Judgment at 19-20; see also August v.
U.S. Fed. Bureau of Investigation, 328 F.3d 697, 700 (D.C. Cir. 2003) (the government need only
raise all claimed FOIA exemptions in the original district court proceedings) (citing Maydak v.
U.S. Dep't of Justice, 218 F.3d 760 (D.C. Cir. 2000)); Young v. Central Intelligence Agency, 972
F.2d 536, 538-39 (4th Cir. 1992) ("an agency does not waive FOIA exemptions by not raising
them during the administrative process")(citing Dubin v. U.S. Dep't of Treasury, 555 F. Supp.
408, 412 (N.D. Ga. 1981)), aff'd, 697 F.2d 1093 (11th Cir. 1983).

and reasoning used in the administrative and decision-making process of the government.  See United States v. Morgan, (Morgan IV), 313 U.S. 409, 422 (1941); Petroleum Info. Corp. v. U.S. Dep't of the Interior, 976 F.2d 1429, 1434 (D.C. Cir. 1992); Access Reports v. U.S. Dep't of Justice, 926 F.2d 1192, 1194-1195 (D.C. Cir.  1991); United States v. Farley, 11 F.3d 1385, 1389 (7th Cir. 1993).

There are three policy bases for this privilege.  Russell v. U.S. Dep't of Air Force, 682 F.2d 1045, 1048 (D.C. Cir. 1982);  Jordan v. U.S. Dep't of Justice, 591 F.2d 753, 772 (D.C. Cir. 1978) (en banc), overruled in part on other grounds, Crooker v. U.S. Bureau of Alcohol, Tobacco and Firearms, 670 F.2d 1051 (D.C. Cir. 1981).  "First, it protects creative debate and candid consideration of alternatives within an agency, and, thereby, improves the quality of agency decisions."  Id. (citing Nat'l Labor Relations Bd. v. Sears, Roebuck & Co., 421 U.S. at 151; Montrose Chemical Corp of California v. Train, 491 F.2d 63, 66 (D.C. Cir. 1974)).  "Second, it protects the public from the confusion that would result from premature exposure to discussions before the policies affecting it had actually been settled upon."  Jordan, 591 F.2d at 772-73; see Russell, 682 F.2d at 1048.  "[T]hird, it protects the integrity of the decision-making process itself by confirming that 'officials should be judged by what they decided[,] not for matters they considered before making up their minds."  Jordan, 591 F.2d at 772-73; see Petroleum Info. Corp., 976 F.2d at 1434; Access Reports, 926 F.2d at 1194-1195; Farley, 11 F.3d at 1389.  The deliberative process privilege remains even after a final decision has been made, because "disclosure at any time could inhibit the free flow of advice."  Fed. Open Market Comm. v. Merrill, 443 U.S. 340, 360 (1979).  Because Exemption 5 was intended to protect the deliberative material as well as the deliberative process of agencies, Nat'l Wildlife Fed'n v. U.S. Forest

Service, 861 F.2d 1114, 1118 (9th Cir. 1988), courts have found that factual materials are encompassed within the privilege, if release of such materials would harm the overall deliberative process.

For a document to be covered by the deliberative process privilege, two requirements must be satisfied. First, the document must be predecisional, i.e., "antecedent to the adoption of agency policy." Jordan, 591 F.2d at 774. In determining whether a document is predecisional, the Supreme Court has stated that the emphasis of the privilege does not "turn on the ability of an agency to identify a specific decision in connection with which a [document] is prepared." Nat'l Labor Relations Bd v. Sears, Roebuck & Co., 421 U.S. at 151 n.18. It is sufficient for the agency to establish "what deliberative process is involved, and the role played by the documents in issue in the course of that process." Coastal States Gas Corp. v. U.S. Dep't of Energy, 617 F.2d 854, 868 (D.C. Cir. 1980).

Second, the document must be deliberative in nature, i.e., it must be "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." Vaughn v. Rosen, 523 F.2d 1135, 1143-44 (D.C. Cir. 1975). See Mapohter v. U.S. Dep't of Justice, 3 F.3d 1533, 1537 (D.C. Cir. 1993); Petroleum Info. Corp., 976 F.2d at 1434. 1992). Deliberative documents frequently consist of "advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." Nat'l Labor Relations Bd. v. Sears, Roebuck & Co., 421 U.S. at 150. Thus, the privilege covers draft documents, proposals, analyses, suggestions, discussions, and other subjective documents that reflect the give-and-take of the consultative process. Coastal States, 617 F.2d at 866.

13

1. <u>Disclosure of the Master Briefs is Precluded by the Deliberative Process Privilege.</u>

The Master Brief Sheets used by the selection boards are protected by the deliberative process privilege. The purpose for convening the selection board is to decide which officers should be promoted. In making this determination, the selection board members utilize each officer's Master Brief Sheet and personnel file. The members analyze the information contained in these records, and determine who should be recommended for promotion.

The Master Brief Sheets, then, are predecisional because they are antecedent to the final decision regarding promotion.[7] The Master Brief Sheets are also deliberative in nature because they are "a direct part of the deliberative process," <u>Coastal States</u>, 617 F.2d 868, and enable the selection board to make recommendations regarding promotions. If the deliberations of the selection board members were disclosed to the public, it would discourage frank and open communication regarding the candidates' qualifications as they are reflected on the Master Brief Sheets. <u>See</u> <u>Access Reports</u>, 926 F.2d at 1195 (The critical factor in determining whether the material is deliberative in nature "is whether disclosure of the information would discourage candid discussions within the agency."). [8]

---

[7]At the conclusion of the proceedings, the Secretary of the Navy may modify the list before sending it to the Chairman of the Joint Chiefs of Staff and Secretary of Defense. 10 U.S.C. ¶ 618(b), (c). The ultimate appointments are made by the President. <u>Id.</u>

[8]Information such as the Value Distributions and the Comparative Assessments on the Master Brief Sheets must be considered in order to determine each officers' competitiveness for promotion. The very act of selecting out this information for consideration is deliberative in nature and constitutes an exercise of judgment by the members of the board. <u>See</u> <u>Montrose Chemical Corp.</u>, 491 F.2d at 71.

14

2.  <u>Disclosure of the Sampled Master Brief Sheets is Precluded by the</u>
<u>Deliberative Process Privilege.</u>

The sampled Master Brief Sheets are protected by the deliberative process privilege as

well.  After the conclusion of the selection board process, the president of the selection board

chooses a sampling of the Master Brief Sheets of the officers who are recommended for

promotion and a sampling of those who are not.  These samples are "selected out" because the

president believes they are representative of the officers who were and were not promoted.

Attachment V, McWaters Decl., ¶¶ 6, 7.  The sampled Master Brief Sheets are stored in a

confidential database and used when Special Selection Board proceedings are convened.

Defendant's Motion for Summary Judgment, Almand Decl., Attachment H, ¶ 7.

Therefore, the sampled Master Brief Sheets are predecisional because they are antecedent

to any decision by the Navy regarding promotions.[9]  Further, the sampled Master Brief Sheets are

deliberative in nature.  The president of the selection board looks at all of the Master Brief

Sheets, compares, evaluates, and analyzes them before making his decision regarding which

Master Brief Sheets should be selected to represent the officers considered in the selection

process. Attachment V, McWaters Decl, ¶¶ 6, 7.  "[N]o one can make a selection of evidence

without exercising some kind of judgment, unless he is simply making a random selection."

<u>Montrose Chemical Corp. of California</u>, 491 F.2d at 68.  In selecting the sampled Master Brief

Sheets, the president has exercised his judgment regarding which candidates are representative of

all candidates considered.  <u>See</u> <u>id</u>. at 71 ("In some cases selection of facts . . . may reflect a

deliberative process which Exemption 5 was intended to shelter.").  Clearly, in making these

_____

[9]They are antecedent to a final decision by a Special Selection Board regarding
promotions.

15

selections, the president is not engaging in a random act. The fact that the sampling will be maintained, unchanged, for the next seven years and used by Special Selection Boards demonstrates the importance of this process. Therefore, to disclose the sampling of Master Brief Sheets would be an inappropriate probing of the mental processes of the president.

Disclosing the Master Brief Sheets used by the Lieutenant Colonel Selection Boards in fiscal years 2004 and 2005 as well as the sampling of the Master Brief Sheets of the officers who were promoted and not promoted would reveal what information was important and what information was unimportant to the selection boards in making their decisions. This, clearly, would reveal the deliberative process of the selection board members as well as the president of the selection board. Moreover, it is not just the mental impressions, conclusions and opinions that are the deliberative process of the board, but also the specific data upon which the board members rely. Therefore, the disclosure of the samplings of the Master Brief Sheets and information contained on them should be barred by Exemption 5.

Plaintiff contends that the Master Brief Sheets themselves should not be protected because what is contained on the Master Brief Sheets is "just data." Plaintiff's Cross-Motion for Summary Judgment at p. 8. However, when factual information is so inextricably connected to the deliberative material that its disclosure would expose or cause harm to the agency's deliberations, the factual material should be protected. See e.g. Wolfe v. U.S. Dep't of Health and Human Services, 839 F.2d 768, 774 (D.C. Cir. 1998). Here, the data contained on the Master Brief Sheets as well as the information in the officers' personnel files are exactly what the selection board is deliberating upon to determine the promotion potential of each officer. The data on the Master Brief Sheets is an integral part of the proceedings and an integral part of the

decision-making process.  The data and the deliberations are so intertwined that to disclose the Master Brief Sheets or the Master Brief Sheet samplings would expose or cause harm to the agency's decisions.

C.  **Master Brief Sheets Are "Proceedings" and Are Protected by Exemption (b)(3).**

1.  The *Chevron* Standard is Applicable.

Plaintiff agrees that the proceedings of a selection board cannot be disclosed.  See Plaintiff's Cross-Motion for Summary Judgment at p. 10.  However, plaintiff contends that the Master Brief Sheets themselves are not "proceedings" of the selection board under 10 U.S.C. § 618(f), and Exemption (b)(3) does not protect them from disclosure.  See id. at pp. 5-6.  In his motion, plaintiff's notes the different definitions of the term "proceedings," and argues that the application of his definition is the most appropriate in this instance.  See id. at pp. 7-8. However, Courts "have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and [that] . . . deference [should be accorded] to administrative interpretations."  Chevron, U.S.A., Inc. v. Natural Resources Defense Counsel et al., 467 U.S. 837, 844 (1984).   Therefore, an agency's definition of a term should be granted deference if that definition is "based upon a reasonable construction of the statute."  Id. at 843.

Chevron, U.S.A., Inc. v. Natural Resources Defense Counsel et al., concerned certain requirements, established by the Clean Air Act, which were applicable to states that had not achieved national air quality standards established by the Environmental Protection Agency ("EPA").  Id. at 839-40.  "The amended Clean Air Act required . . . 'nonattainment' [s]tates to establish a permit program regulating 'new or modified major stationary sources' of air

17

pollution." Id. at 840.  "[A] permit [would] not be issued for a new or modified major statutory

source unless several stringent conditions [were] met." Id.  The EPA regulation "allowed a

[s]tate to adopt a plant-wide definition of the term 'statutory source.'  Under this definition, an

existing plant that contain[ed] several pollution-emitting devices [could] install or modify one

piece of equipment without meeting the permit conditions if the alteration w[ould] not increase

the total emissions from the plant." Id.  The issue confronted by the Court was "whether [the]

EPA's decision to allow [s]tates to treat all of the pollution-emitting devices within the same

industrial grouping as though they were encased within a single 'bubble' [was] based upon a

reasonable construction of the term 'statutory source.'" Id.

The Court of Appeals recognized that Congress did not "explicitly define what [it]

envisioned as a 'statutory source' . . . and that the issue was not squarely addressed in the

legislative history . . . ." Id. at 837.  The Court of Appeals then concluded that "a plant-wide

definition was 'inappropriate.'" Id.  The Supreme Court, however, stated that "[t]he basic legal

error of the Court of Appeals was to adopt a static judicial definition of the term 'statutory

source' when it had decided that Congress itself had not commanded that definition." Id. at 842.

The Supreme Court stated that:

"[w]hen a court reviews an agency's construction of the statute which it
administers, it is confronted with two questions.  First, . . . whether Congress has
directly spoken to the precise question at issue.  If the intent of Congress is clear,
that is the end of the matter; for the court as well as the agency, must give effect to
the unambiguously expressed intent of Congress.  If, however, . . . Congress has
not directly addressed the precise question at issue, the court does not simply
impose its own construction on the statute . . . Rather, if the statute is silent or
ambiguous with respect to the specific issue, the question for the court is whether

the agency's answer is based on a permissible construction of the statute.[10]

Id. at 842-43.

In the matter at hand, pursuant to 10 U.S.C. § 618(f), "except as authorized or required . . . proceedings of a selection board convened under 611(a) . . . may not be disclosed to any person not a member of the board." Congress did not address the precise definition of "proceedings." However, the Department of the Navy has determined that "proceedings of a selection board" include the Master Brief Sheets which are utilized during the deliberations of selection boards.

Title 5, United States Code, Section 552(b)(3) ("Exemption (b)(3)") of the Freedom of Information Act permits the withholding of records prohibited from disclosure by another statute if that statute either:  (A) requires that the matters be withheld from the public without discretion, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.  See 5 U.S.C. § 552(b)(3); Smith v. United States, 251 F.3d 1047, 1048-49 (D.C. Cir. 2001).  "To qualify as a withholding provision, a statute must be 'the product of congressional appreciation of the dangers inherent in airing particular data' and must 'incorporate a formula whereby the administrator may determine precisely whether the disclosure in any instance would pose the hazard that Congress foresaw.'" Wisconsin Project on Nuclear Arms Control v. U.S. Dep't of Justice, 317 F.3d 275, 290 (D.C. Cir. 2003) (quoting American Jewish Congress v. Kreps, 574 F.2d 624, 628-29 (D.C. Cir. 1978)); see also Irons & Sears v. Dann, 606 F.2d 1215, 1220 (D.C. Cir. 1979) ("only explicit nondisclosure statutes that evidence a congressional determination that certain materials ought to be kept in confidence will be sufficient to qualify

---

[10]"The court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction . . . ."  Id. at 843 n.11.

under the exception."). Because 10 U.S.C. § 618(f) states that the proceedings of a selection board may not be disclosed and Exemption (b)(3) calls for the withholding of information prohibited from disclosure by another statute, the sampled Master Brief Sheets requested by plaintiff were properly withheld.

The Navy's decision that proceedings of a selection board include the sampled Master Brief Sheets clearly was based upon a permissible construction of the statute. So long as the agency's interpretation represents a "fair and considered judgment on the matter," Auer v. Robbins, 519 U.S. 452, 462 (1997), the courts should defer to the agency's interpretation of statutes it has been delegated to enforce. See Small v. United States, 158 F.3d 576, 580-81 (Fed. Cir. 1998)(giving deference to the military's interpretation of promotion selection board procedures under the Chevron doctrine), cert. denied, 528 U.S. 821 (1999); Curtis v. Peters, 107 F.Supp.2d at 1(same).[11] See also Conroy v. Aniskoff, 507 U.S. 511, 515 (1993)(The cardinal rule of statutory construction that a "statute is to be read as a whole, . . . since the meaning of statutory language, plain or not, depends on context." (citations and internal quotations omitted)).

Therefore, while plaintiff argues that the Court should determine that the term "proceedings" includes only the actual deliberations of the selection board and not the sampled Master Brief Sheets, the agency charged with administering the statute has determined the contrary. The Court should "not substitute its own construction of [this] statutory provision for [the] reasonable interpretation made by the . . . agency." Chevron , U.S.A., Inc., 467 U.S. at 844.

_____

[11]Courts also must "defer to an agency's interpretation of a statute even if proffered outside administrative adjudication or rulemaking so long as [the court is] assured it is the official interpretation." U.S. General Services Admin. v. Fed. Labor Relations Auth., 86 F.3d 1185, 1188 (D.C. Cir. 1996)(internal quotations and citations omitted).

2.  <u>Particular Deference Should Be Granted to the Military's Interpretation of Its Statutes</u>

Courts traditionally have given additional deference to the military's interpretation of statute's dealing with purely military functions.  <u>See</u> <u>Chappell v. Wallace</u>, 462 U.S. 296, 305 (1983)(stating that the military must have broad power to deal with its own personnel because of the special nature of military life); <u>Goldman v. Weinberger</u>, 475 US. 503, 506-07 (1987)(distinguishing the military from civilian entities, and affording "great deference to the professional judgment of miliary authorities concerning the relative importance of a particularly military interest").  In particular, deference to the military regarding its own internal management "is at its highest when the military, pursuant to its own regulations, effects personnel changes through the promotion or discharge process."  <u>Diley v. Alexander</u>, 603 F.2d 914, 920 (D.C. Cir. 1979).  <u>Cf.</u> <u>Small v. United States</u>, 158 F.3d at 581 (deferring to the Air Force interpretation of 10 U.S.C. §§ 616-17 in setting procedures for promotion board review of records).

In passing § 618(f), which calls for proceedings of a selection board to be confidential, Congress not only wanted to provide structure to the "selection and management of [military] leaders," but also give the President, as Commander-in-Chief, flexibility because the "selection and management of . . . military leaders" is "one of the most important aspects of U.S. National Security."  <u>See</u> 125 Cong. Record S17555 (daily ed.  Nov. 30, 1979).  Therefore, the Navy's determination of what information should and should not be disclosed to the public regarding its unique promotion procedures should be accorded considerable deference.

3.  <u>The Navy's Policies Demonstrate that the Master Brief Sheets are Part of the Proceedings of a Selection Board</u>

The Marine Corps Promotions Manual, using similar language to that of § 618(f),

counsels members of promotion boards that documents considered by the board are not to be

disclosed. <u>See</u> Attachment Q (MCO P1400.31B, ¶ 4001). The instruction specifically states,

"Board presidents are charged to brief the members and recorders of the board, both upon

convening and immediately prior to adjournment, that proceedings, deliberations, *materials, and*

*any other information pertaining to the board* are not releasable except as authorized by the

Secretary of the Navy, the Secretary of Defense, or the President." <u>Id</u>. (emphasis added); <u>accord</u>

Attachment R (Dept. of Army Memo 600-2, ¶ 6.g. (1999)) ("Board members will not disclose

statistical analyses, details of the board proceedings, or *specifics pertaining to selection or non-*

*selection of individual officers* unless authorized to do so by proper authority.") (emphasis

added). This strict confidentiality imposed on board members prohibits them from disclosing

how they used the information provided in making their decisions to promote certain officers.

Disclosing the sampled Master Brief Sheets would provide exactly such information in

documentary form, and circumvent the confidentiality provisions. In addition, the fact that the

Navy stores the sampled Master Brief Sheets in a confidential database, further demonstrates that

the Navy considers the sampled Master Brief Sheets to be part of the proceedings of the selection

board.

### D.  Freedom of Information Act Exemption (b)(6) is Applicable.

Freedom of Information Act Exemption (b)(6) provides for the withholding of matters

contained in "personnel and medical files and similar files the disclosure of which would

constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). In a

definitive opinion on the meaning of the term "similar files," the Supreme Court held that

Exemption 6 "'[was] intended to cover detailed government records on an individual which can

22

be identified as applying to that individual.'" U.S. Dep't of State v. Washington Post Co., 456 U.S. 595, 602 (1982) (quoting H.R. Rep. No. 1497, 89th Cong., 2d Sess. 11, reprinted in 1966 U.S. Code Cong. & Admin. News 2428); New York Times Co. v. NASA, 920 F.2d 1002, 1005 (D.C. Cir. 1990 (en banc). Thus, even information which is not specifically located in "personnel files" comes within the penumbra of Exemption 6 because the primary purpose of enacting Exemption 6 was "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information."  Washington Post Co., 456 U.S. at 599.

The first step in assessing the propriety of information withheld under Exemption 6 requires an identification of the privacy interest at issue.  See U.S. Dep't of Justice v. Reporters Committee for Freedom of the Press , 489 U.S. 749, 763 (1989).  In the usual case, the Court looks to see whether the information requested, if released, would violate a recognized privacy interest of the subject of such information.  See Schell v. U.S. Dep't of Health and Human Services, 843 F.2d 933, 938 (6th Cir. 1988); Ripskis v. U.S. Dep't of Housing and Urban Dev., 746 F.2d 1, 3 (D.C. Cir. 1984).  Once a privacy interest has been found to exist, a determination regarding whether information can be properly withheld necessitates a balancing of the individual's right to privacy against the public's right of access to information in government files.  See, e.g., Reporters Committee for Freedom of the Press, 489 U.S. at 776-80.  If a document invades a third party's privacy, and does not contain "official information" shedding light on government functions, it may be withheld under Exemption 6.  Id.  In Public Citizen Health Research Group v. U.S. Dep't of Labor, 591 F.2d 808 (D.C. Cir. 1978), the Court of Appeals stated:

> [s]ince this a balancing test, any invasion of privacy can prevail, so long as the public interest balanced against it is sufficiently weaker.  The threat to privacy thus need not be patent or obvious to be relevant.  It need only outweigh the public interest.

591 F.2d at 809.

In <u>U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press</u>, the Supreme Court provided a framework for analyzing the application of FOIA exemptions that involved personal privacy interests.  489 U.S. at 762-75 (holding that a privacy interest existed in information, that although publically available, was "practically obscure").[12]  In that case, the Court determined that, in cases where a privacy interest exists, the public interest in disclosure must be weighed against the privacy interests without consideration of the requester's identity or purpose.  <u>Id</u>. at 769-773.  In order for disclosure to serve the public interest, the information in question must "shed light on the agency's performance of its statutory duties."  <u>Id</u>. at 773.

Here, plaintiff requests the sampled Master Brief Sheets which contain private information of officers considered for promotion by the 2004 and 2005 Lieutenant Colonel Promotion Selection Boards.  Plaintiff argues that his request falls short of triggering a privacy interest because he seeks only copies of documents with various redactions.  <u>See</u> Plaintiff's Cross Motion for Summary Judgment at pp. 20-21.  However, this argument fails to insulate plaintiff's request from the application of Exemption (b)(6).  Despite plaintiff's proposed redactions, protected personal information would still be disclosed.[13]  The privacy interest in this personal

---

[12]Although the Supreme Court's analysis in <u>Reporters Comm. for Freedom of the Press</u> related to FOIA exemption (b)(7)(C) (exempting private information compiled for law enforcement purposes), it is equally applicable to the (b)(6) privacy exemption relevant here.

[13]This includes the tabulated results of performance evaluations spanning the bulk of the subject officers' careers.  <u>See</u> Defendant's Motion for Summary Judgment, Almand Decl., Attachment C (two sample Master Brief Sheets, with redactions, enclosures to plaintiff's

information outweighs any minimal public interest in its disclosure. Moreover, the personal information regarding these officers does not "shed light on the agency's performance of its statutory duties." <u>Reporters Comm. for Freedom of the Press</u>, 489 U.S. at 773. It only sheds light on the performance of the particular officer.

Further, plaintiff's request for this redacted personal information cannot be viewed in a vacuum. Granting plaintiff's request for disclosure of but one piece of private information, even with redactions, could conceivably lead to subsequent FOIA requests seeking other pieces of private information. Therefore, it is foreseeable that a series of related requests, each seeking seemingly innocuous pieces of information, could ultimately lead to the improper release of private information in total. Hence, over the course of various related FOIA requests, information could be obtained that, if sought in a single request, would clearly be exempted under Exemption (b)(6).

Plaintiff's claim that the information he seeks in his request would "enlighten" the public, thereby tipping the personal privacy interest - public interest balance in his favor, is without merit. <u>See</u> Plaintiff's Cross-Motion for Summary Judgment at p. 21. The Master Brief Sheets plaintiff requests are samplings from only two promotion boards, and are entirely insufficient to allow the public to determine whether defendants are fulfilling their statutory responsibilities. <u>See</u> <u>Reporters Comm. for Freedom of the Press</u>, 489 U.S. at 772. Further, even if the Master Brief Sheet samplings from the two promotion selection boards could provide an accurate picture of how defendants are conducting their promotion boards, any such public interest would be

_____

request).

25

outweighed by the disclosure of highly personal information.[14]

Plaintiff contends that because Master Brief Sheets are released in other instances, their disclosure should not be prevented here.  See Plaintiff's Cross-Motion for Summary Judgment at pp. 12, 18-19.  However, while Master Brief Sheets are available in ODIRMS, officers can only view their own Master Brief Sheets, not the Master Brief Sheets of other officers.  In addition, they are not available to the general public.  See Defendant's Motion for Summary Judgment, Almand Decl., Attachment H, ¶ 7.  While the Commandant of the Marine Corps releases certain statistical information from the Master Brief Sheets, this statistical information merely summarizes various biographical and occupational data from the entire pool of candidates, not key individual personnel and performance data.  See Plaintiff's Cross-Motion for Summary Judgment at p. 18.

Therefore, it is appropriate that all the information in the sampling of Master Brief Sheets be exempt from disclosure under Exemption (b)(6).  Even if there exists some minimal public interest in disclosing all or part of the information contained in the sampled Master Brief sheets, the minimal public interest is outweighed by the privacy interests of the individual officers whose sampled Master Brief Sheets plaintiff seeks to obtain.

---

[14]While plaintiff states that the information which he does not seek from the sampled Master Brief Sheets can be redacted, the Master Brief Sheets contain a summary of an individual officer's entire performance evaluation record.  See Almand Decl. ¶ 4 n.1.  Therefore, it is arguable that the personal information plaintiff seeks is inextricably linked to other personal information contained in the Master Brief Sheets and should not be disclosed.  See Mead Data Center v. U.S. Dep't of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977) ("It has long been the rule that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions.").

### E.  **The Release of the Precepts Does Not Contradict Defendant's Decision to Withhold the Sampled Master Brief Sheets.**

Plaintiff states that "[d]efendant's current position that the Master Brief Sheets are 'proceedings of the board' is inconsistent with the [public release] of the 'precepts' because the precepts are also used by board members in making their promotion recommendations." Plaintiff's Cross-Motion for Summary Judgment at p. 15.  However, the military's release of precepts to the public does not support plaintiff's argument.  A precept is the document which provides the selection board with specific instructions regarding how the selection board should be conducted.  It contains the Secretary of the Navy's official guidance which "enable[s] the board to properly perform its functions."  10 U.S.C. § 615(b).[15]

In this case, the Secretary of the Navy issued the precepts to provide the two Lieutenant Colonel selection boards with direction regarding their duties as well as their oaths of confidentiality.  See Plaintiff's Cross-Motion for Summary Judgment, Exhibit 6, ¶ 8.  The precept is, therefore, fundamentally different from the "materials and other information" that the board utilizes in making its promotion recommendations.  The precept is issued in order to instruct each selection board on the manner in which to proceed.  It is released to the public to demonstrate the integrity and the proper functioning of the Navy's promotional system.  See S. REP. NO. 102-1, at 24 (1991) ("the integrity of the promotion process is essential to the integrity of the officer corps"). Because the sampled Master Brief Sheets contain "key personal data and a summary of [each officer's] entire performance record," see Defendant's Motion for Summary

---

[15]The precepts are reviewed for fairness and accuracy before being approved by the Secretary of the Navy.  See Attachment T (SECNAVINST 1420.1B, ¶ 13); see also Attachment U (MCO P1400.31B, ¶ 2002).

Judgment, Almand Decl. ¶ 4 n.1,  there is no equivalent reason to release this information to the public.

### F.  The Government's Interpretation of the Case Law Is Correct.

Plaintiff argues that the government misinterprets In re: England, Secretary of the Navy, et al., 375 F.3d 1169 (D.C. Cir. 2004).  Plaintiff's Cross-Motion for Summary Judgment at p. 6.  According to plaintiff, In re: England demonstrates that the proceedings which are not to be disclosed are the actual deliberations of the board members, not the sampled Master Brief Sheets.  Plaintiff argues that the interest of protecting "frank and open discussion" of the board members applies only to actual deliberations.  See Plaintiff's Cross-Motion for Summary Judgment at p. 11.  However, the government's interpretation of In re: England is correct.

In that case, the Court addressed a request to "release board members from their oaths not to disclose board proceedings."  In re: England, 375 F.3d at 1175.  Specifically, current and former Non-Liturgical Protestant chaplains and their agency filed suit against the Secretary of the Navy alleging that "the Navy ha[d] established, promoted and maintained religious quotas and other discriminatory practices in the Navy Chaplain Corps . . . ."  Id.  The Chaplains asked the Secretary of the Navy to release the selection board members from their oath of confidentiality and permit them to testify.  The Secretary declined the request "argu[ing] that 10 U.S.C. § 618(f) barred disclosure of selection board proceedings."  Id.

The Circuit Court determined that "[d]isclosure of selection board proceedings in civil discovery would . . . undermine, if not totally frustrate, the purpose of Section 618(f) . . . If board members knew that candidates passed over for promotion could gain access to board proceedings, that would clearly inhibit frank assessment of candidates' relative strengths and

weaknesses.  Id. at 1778.  Therefore, the Court held that board members would not be released

from their oaths.  In making this determination, the Court did not mention differing levels of

confidentiality that board members must maintain.  It did not parse out any aspect of the selection

board proceedings which the members could discuss or release.  See id. at 1181.  Rather, the

Court concluded that "the bar on disclosure . . . block[ed] civil discovery of promotion selection

board proceedings in civil litigation."  Id.  Because the interest to be protected was the "frank and

open discussion" of board members, the solution to the confidentiality issue was not selective

disclosure of materials from those proceedings.  Rather, the court upheld the unambiguous

statutory framework banning all disclosure of the selection board proceedings to anyone not a

member of the board.  Id.

Plaintiff also argues that the defendants misinterpreted Miller v. Dep't of the Navy, 338

F.2d 5 (D.D.C. 2005).  In Miller, plaintiff, a Lieutenant Commander in the United States Navy,

brought suit against the Department of the Navy when she was not selected for promotion.   Id.

Through FOIA requests, plaintiff sought the disclosure of a "Navy Bureau of Personnel Inspector

General ("BUPER IG") investigation report, which was generated following an investigation into

[the] personnel decision not [to] promot[e] her."  Id. at 7.[16]  Plaintiff was sent a redacted version

of the report.  Plaintiff then requested an unredacted version.  However, the unredacted version

contained, among other things, information about the proceedings of plaintiff's promotion board.

The Court determined that FOIA Exemption (b)(3) applied.  Specifically, the Court stated

that "[a]lthough [10 U.S.C. § 618(f)] . . . provide[d] for limited circumstances in which

_____

[16]Plaintiff also requested that the Secretary of the Navy convene a Special Selection
Board to reconsider her non-promotion.  The Court denied this request.  Miller, 383 F.Supp. 2d
at 7.

information regarding the proceedings [could] be disclosed internally, nothing in the statute provide[d] for disclosure to the public of the information, nor discretion by the Secretary of the Navy to create such an exception." Id. at n.9.[17]

      With respect to the information redacted from the BUPER IG report, the Court noted that, in conducting the investigation, the investigating officer analyzed the records from a session of the promotion board, and the decisions made in that session.[18] The information gleaned from the proceedings was redacted from the BUPER IG report prior to providing the report to plaintiff. The Court held that plaintiff properly was not provided with the information which was redacted from the report. Further, the Court did not parse out any exceptions to the categorical ban on disclosure to the public. See id. at 17. In its decision, the Court stated "that the information withheld, pertaining specifically to proceedings of the selection proceeding, clearly falls within 10 U.S.C. § 618(f), and therefore, is exempt from disclosure [pursuant to] Exemption [(b)](3)." Id. In the matter at hand, by seeking disclosure of the sampling of Master Brief Sheets, plaintiff is seeking records used in a session of a promotion board. As in Miller, the information regarding the proceedings as well as the records from the proceedings should be exempt from disclosure.

      Finally, plaintiff argues that the defendants "unduly characterize[d]" Curtis v. Peters, 107 F.Supp.2d 1(D.D.C. 2000). See Plaintiff's Cross-Motion for Summary Judgment at pp. 13-15.

---

[17]The Court also determined that "the proceedings of the selection board were intraagency proceedings concerning the decision making process of that administrative body, and the deliberative process privilege[, under FOIA Exemption (b)(5),] applie[d]." Id. at 17.

[18]These sessions were called "tank sessions." Typically, a particular candidate's qualifications are considered in several tank sessions. Miller, 383 F.Supp.2d at 17.

However, defendants cited Curtis to emphasize the fact that courts have determined that decisions regarding whether candidates are suitable for military leadership positions should be left to the military.  In Curtis, plaintiff and plaintiff-intervenor were denied promotions from Major to Lieutenant Colonel in the Air Force Reserves.  They contended that the Air Force violated its statutory directives in reviewing their candidacies.  The Court stated that "when the agency's interpretation of a statute is 'longstanding and consistent,' the Court should defer to the agency's interpretation."  Curtis, 107 F.Supp.2d at 6, citing Fed. Deposit Ins. Corp. v. Philadelphia Gear Corp., 476 U.S. 426, 438 (1986)(additional citations omitted.)

In this matter, the Navy's practice of non-disclosure of board proceedings existed long before the codification of the practice in 1980.  See H.R. REP. 96-1462, at 40 (1980).  See 10 U.S.C. § 618(f).  The determination by the Secretary of the Navy that the sampled Master Brief Sheets are part of the selection board proceedings as well as the determination that these proceedings not be disclosed, should be accorded deference.  This will help ensure that "[d]ecisions [regarding] who should be in military leadership positions . . . [is] left to the expertise of the military . . . ."  Curtis, 107 F.Supp.2d at 9.

**G.  The Information Plaintiff Seeks Cannot Be Reasonably Segregated.**

The Court of Appeals for the District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue sua sponte."  Trans-Pacific Policing Agreement v. U.S. Customs Service, 177 F.3d 1022, 1028 (D.C. Cir. 1999).  FOIA requires that, if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions."

5 U.S.C. § 552(b); Mead Data Center, Inc., 566 F.2d at 260.

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements." Id. at 261. The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed. Id. All that is required is that the government show "with 'reasonable specificity'" why a document cannot be further segregated. Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996). Moreover, the agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." Mead Data Center, Inc., 566 F.2d at 261, n.55.

Here, plaintiff argues that the information he seeks can be disclosed if the sampled Master Brief sheets are redacted. See Complaint ¶ 18. However, the factual information that plaintiff seeks from the sampled Master Brief Sheets is so inextricably intertwined with the deliberative material, that it cannot be reasonably segregated and released. Disclosing even portions of the sampled Master Brief Sheet would disclose information about which the selection board deliberated, and violate the provisions of Exemption (b)(5).

Because Exemption (b)(3) and 10 U.S.C. § 618(f) protect the proceedings of selection boards, and the Master Brief Sheets and sampled Master Brief Sheets are part of those proceedings, releasing some information from the Master Brief Sheets would violate the intent of these statutes. Exemption (b)(3) "differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of the withheld material within that statute's

32

coverage." <u>Goland v. Central Intelligence Agency</u>, 607 F.2d 339, 350 (D.C. Cir. 1978), <u>cert</u>.

<u>denied</u>, 445 U.S. 927 (1980).   The Master Brief Sheets are included within the coverage of 10

U.S.C. § 618(f).  Therefore, the factual information in the Master Brief Sheets is protected from

disclosure by Exemption (b)(3).

     Finally, Exemption (b)(6) permits the government to withhold all information about

individuals in "personnel and medical files and similar files" when the disclosure of such

information "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. §

552(b)(6).  Because Exemption (b)(6) protects from release the Master Brief Sheets and sampled

Master Brief Sheets in their entirety, no information within the sampled Master Brief Sheets can

be released.

## IV.  CONCLUSION

For the foregoing reasons, plaintiff's Cross-Motion for Summary Judgment should be

denied, and defendant's Motion for Summary Judgment should be granted.

Respectfully submitted,


/s/
KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney


/s/
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


/s/
MARIAN L. BORUM, D.C. Bar #435409
Assistant United States Attorney
501 3rd Street, N.W., 4th Floor
Washington, D.C.  20530
(202) 514-6531
Counsel for Defendant


Of Counsel:
Major Thomas B. Merritt, Jr., USMC
Lieutenant Michael J. Navarre, JAGC, USNR, D.C. Bar #490126
Department of the Navy
Office of the Judge Advocate General
General Litigation Division
Washington Navy Yard, D.C.

34

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that on this 1st day of September, 2006, a copy of the foregoing

was sent by First-Class Mail, postage prepaid, to:

Jackson L. McGrady
820 Bright Street
Fredericksburg, Virginia 22401


/s/_____
MARIAN L. BORUM
Assistant United States Attorney

35