UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JACKSON L. MCGRADY,           )
                              )
          Plaintiff           )
                              )
v.                            )
                              )   Civil Action No.06-0752(GK)
DEPARTMENT OF THE NAVY,       )
DONALD C. WINTER, Secretary   )
of the Navy,                  )
                              )
          Defendants          )

**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to LCvR 7, Plaintiff submits this reply in support of his motion for summary judgment. In their Opposition, Defendants maintain the records sought by Plaintiff are exempt from disclosure under Freedom of Information Act (FOIA) Exemption 3. Defendants also allege that the documents are properly withheld under Exemption 5[1], deliberative process privilege and Exemption 6, personal information. As demonstrated below, Defendants have failed in their burden to demonstrate that the requested documents properly fall within any of the claimed exemptions and should be ordered to produce the requested redacted documents.

**I. EXEMPTION 5 – DELIBERATIVE PROCESS PRIVILEGE - DOES NOT PROHIBIT RELEASE OF THE REQUESTED DOCUMENTS.**

---

[1] Notwithstanding the Court's *de novo* review in FOIA cases, Defendants have not properly invoked Exemption 5. Captain Almand is the Secretary's designee for final agency denials of FOIA requests. Almand Declaration, ¶ 2. Captain Almand never invoked Exemption 5. *See* Almand Declaration. Defendants' present argument flows from the Declaration of Major McWaters although he never identifies his delegated authority to act for the Secretary or even specifically identifies that the requested material is covered by Exemption 5. Def. Attch. V. *See Mobil Oil Corp v. Dept. of Energy*, 102 F.R.D. 1, 5 (N.D.N.Y. (1983).

RECEIVED
SEP 2 5 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

### A. Legal Standard for Exemption 5.

Exemption 5 allows the Government to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party ⋯ in litigation with the agency." 5 U.S.C. § 552(b)(5). This Exemption protects against disclosure of those documents normally privileged in the civil discovery context. *Judicial Watch*, 365 F.3d at 1113 (citation omitted). Exemption 5 includes the deliberative process privilege, which protects "confidential intra-agency advisory opinions" and "materials reflecting deliberative or policy-making processes." In *re Sealed Case*, 121 F.3d 729, 737 (D.C.Cir.1997). The purpose of the privilege " 'is to prevent injury to the quality of agency decisions' by allowing government officials freedom to debate alternative approaches in private." *Id.* (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975)).

As the D.C. Circuit has explained, "[t]wo requirements are essential to the deliberative process privilege: the material must be predecisional and it must be deliberative." *In re Sealed Case*, 121 F.3d at 737 (citing *Army Times Publ'g Co. v. Dep't of the Air Force*, 998 F.2d 1067, 1070 (D.C.Cir.1993); *Wolfe v. Dep't of Health and Human Servs.*, 839 F.2d 768, 774 (D.C.Cir.1988) (en banc)). A document is predecisional if "it was generated before the adoption of an agency policy." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C.Cir.1980). A document is deliberative if it "reflects the give-and-take of the consultative process." *Id.* at 866. Material is often found to be deliberative if its disclosure would tend to "discourage candid discussion within an agency." *Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1195 (D.C.Cir.1991) (internal citations omitted).

"The deliberative process privilege does not shield documents that simply state or explain a decision the government has already made or protect material that is purely factual, unless the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations." *In re Sealed Case,* 121 F.3d at 737 (citations omitted). However, "in some instances, 'the disclosure of even purely factual material may so expose the deliberative process within an agency that the material is appropriately held privileged." *Petroleum Info. Corp.,* 976 F.2d at 1434 (quoting *Mead Data,* 566 F.2d at 256).

### B. Master Brief Sheets Are Not "Inter-Agency or Intra-Agency Memorandums or Letters".

The pleadings may give the appearance that Master Brief Sheets exist only for use by promotion boards. This is not the case. Master Brief Sheets exist as a personnel management tool and provide an easy way for an officer to review his Official Military Personnel File (OMPF). It is the individual officer's responsibility to ensure the accuracy and completeness of his record prior to the convening of a promotion board. Plaintiff's Exhibit (Pl. Ex.) 9, ¶ 4; and 10, ¶ 4.A. Defendants encourage individual officers to request their Master Brief Sheet as an aid to conducting periodic reviews or audits of their records, particularly before the convening of a selection board. *Id.*

The OMPF includes: service computation data; general administrative data; commendatory and derogatory material; performance data (fitness reports); and health data. *See* Def. Attch. W, para 7008. Certain objective data contained in these documents is summarized on the Master Brief Sheet. *See* Pl. Ex. 2 (Example of a Master Brief Sheet). The primary data listed on the Master Brief Sheets is the objective markings assigned to an officer by his first and second level supervisor on the fitness report. *Id.*

3

This makes it easy for an officer to audit the OMPF, the primary focus of which is to ensure that all fitness reports are present. The Master Brief Sheet does not contain any subjective commentary by an officer's evaluators. *Id.*

The methodology used to generate the Master Brief Sheet given to the selection board is the same as when providing a copy of the Master Brief Sheet to an individual officer. Pl. Undisputed Facts, ¶ 17.[2] If the officer requests his Master Brief Sheet immediately before the convening of the selection board, the officer will be given the exact information that the promotion board will consider. *Id.* From these facts, it is clear that the Master Brief Sheets cannot qualify as an "inter-agency or intra-agency memorandums or letters" as the Master Brief Sheets are freely available to an individual that is not a part of the deliberative process.

### C. Requested Documents Fall Outside Exemption 5.

If the Court determines that Master Brief Sheets are "inter-agency or intra-agency memorandums or letters" the issue becomes whether the documents are "predecisional" and "deliberative" in nature. In arguing that the Master brief Sheets meet both criteria, Defendants make a distinction between the Master Brief Sheets considered by the selection board and the records that are ultimately designated by the president of the board to comprise the "sampling." Plaintiff follows a similar approach.

### 1. Master Brief Sheets Considered By the Promotion Board.

Defendants argue that the Master Brief Sheets are deliberative in nature because they are "a direct part of the deliberative process." Defendant's Opposition (Def. Opp.),

---

[2] Defendants did not file an opposition to Plaintiff's Undisputed Facts and are admitted pursuant to LCvR7 (h).

4

p. 14. Certainly, the Master Brief Sheets are before the board members and contain data that may be the subject of discussion by the members but this does not make the Master Brief Sheets deliberative in nature. The Master Brief Sheets are "just data."

Applicable case law makes clear that the Master Brief Sheets are not deliberative. To be deliberative in nature a document must be "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." Def. Opp., p. 13 citing to *Vaugh v. Rosen*, 523 F.2d 1135, 1143-44 (D.C. Cir. 1975). Master Brief Sheets do not make any recommendation or express any opinions about whether a particular officer should be promoted. They contain "just data." Deliberative documents frequently consist of "advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies formulated." Def. Opp. p. 13 citing to *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 150. The Master Brief Sheets do not fit this description. They are "just data." The privilege covers draft documents, proposals, analyses, suggestions, discussions, and other subjective documents that reflect the give-and-take of the consultation process." Def. Opp., p. 13 citing *Coastal States*, 617 F.2d 866. Again, this does not fit the description of the Master Brief Sheets.

Defendants even admit that the Master Brief Sheets contains "just data." The declaration of Major McWaters, which was submitted by the Defendants, states that the Master Brief Sheets "contain only factual information." Def. Attch V, ¶ 7. Major McWaters statement is confirmed by Defendants' admission that a Master Brief Sheet:

 i. does not reveal any discussions among the selection board members about whether a particular officer should be selected for promotion;

 ii. does not reveal whether a particular board member recommended that a particular officer be selected for promotion;

    iii.    does not reveal whether the selection board recommended that a particular officer be selected for promotion;

    iv.    does not reveal what procedures were used by the board to determine which officers were selected for promotion;

    v.    does not reveal any of the discussions among the board members on whether to promote a particular officer. Pl. Undisputed Facts para 17; *see* Pl. Ex 2.

It is also important to understand that just because data is contained on the Master Brief Sheet, it does not necessarily mean that the data is given any significant weight. As stated in Defendant's motion "[t]he members of the selection board consider, debate, and weigh the relative importance of the information on the Master Brief Sheets, and in the personnel files, to make the promotion recommendations." Def. Opp., p. 7. As such release of the Master Brief Sheets cannot reveal any part of the deliberative process.[3]

### 2. "Sampling" of Records - Master Brief Sheet Not Exempt.

**i. Sampling is not predecisional.** Defendants aver that the Master Brief Sheets are predecisional because the Secretary has not yet made any decision regarding promotions. Def. Opp., p. 15. However, this ignores that the Secretary takes no action to approve, review, or otherwise consider the selection of the sampling.

The sampling is not selected by the board members nor do they provide any input into that decision. The sampling is selected in the sole discretion of the president. Def. Opp., pp. 8-9. The sampling of records is selected "at the conclusion of the selection board proceedings." *Id.* The selection of the sampling is a process that is separate and apart from the proceedings of the selection board and is done to fulfill Defendants'

---

[3] Defendants' argument is undercut by the fact that Defendants publish detailed statistics concerning the characteristics of those selected for promotion. *See* Pl. Ex. 7 and 8.

6

statutorily imposed duty under 10 U.S.C. § 628. Thus, while the Master Brief Sheets that are before the selection board are predecisional as the Secretary has not yet rendered a decision, the same is not true for the sampling. The president's decision as to the sampling is a final decision. These Master Brief Sheets are not predecisional.

Defendants argue the sampling is antecedent to the decision of a Special Selection Board. Def. Opp., p. 15, n. 9. Plaintiff argues contra wise. The selection of the sampling is a result and is, although not likely subject to judicial review, a final agency decision which provides a Special Selection Board with the criteria to carry out its statutory function. In this sense, the sampling should be made available to the public, consistent with other FOIA Exemptions, to the greatest extent possible to prevent the agency from applying "secret law" in the context of its Special Selection Board decisions. *See Coastal States Gas Corp v. Department of Energy*, 617 F.2d 854 (D.C. Cir. 1980).

**ii. Sampling is not Deliberative.** Plaintiff argues that the documents are not deliberative in nature. The sampling is "just data" for the selection board process. The sampling establishes the baseline upon which a Special Selection Board determines whether a candidate referred to it should be selected. This is similar to the idea that Master Brief Sheets before the regular selection board are "just data."

Defendants claim that release of the Master Briefs Sheets would reveal the deliberative process of the selection board and the president. Def. Opp., p. 16. This is not the case. The sampling does not reveal any of the discussions of the board members or what weight the board accorded any individual factor. Further, upon the public release of the results of a promotion board, Defendants publish statistics concerning the make-up of those officers recommended for promotion. Pl. Undisputed Facts ¶ 13. This

information includes education level, race, gender and occupational specialty of those who were selected for promotion. *Id.* An officer's occupational specialty and level of education, including civilian and military, are resident on the Master Brief Sheet. *Id.*, Pl. Ex. 2. Occupational specialty is relevant to the selection board's decision of whether to select and officer for promotion. Pl. Ex. 4, ¶ 5.d; and Pl. Ex. 6, ¶ 5.g. Education is relevant to the selection board's decision. Pl. Ex. 4, and 6, Given that Defendants publicly release this information, their position must be that the deliberations of the board are not implicated by release of this information. As such, revealing one other data point contained on the Master Brief Sheet should likewise not impinge on or reveal the deliberative process of the selection board. Again, "[t]he members of the selection board consider, debate, and weigh the relative importance of the information on the Master Brief Sheets, and in the personnel files, to make the promotion recommendations." Def. Opp., p. 7

It is also important to highlight that the sampling does not reveal the deliberations of the selection board for another reason. The president picks the sampling of records to be "representative" of all candidates considered. Def. Opp., p. 15. It is not meant to be representative of the selection board's deliberations or their deliberative process. The sampling also does not reveal the deliberative process of the president. Release of the sampling does nothing to reveal the criteria used by the president in reaching his decision.

### D. No Identification of How Release Would Impact Deliberations or Selection of Sampling.

Aside from the debate as to whether a document is predecisional or deliberative,

the ultimate touchstone must be whether there is any impact on the deliberative process. Defendants have not articulated to any extent how debate among the selection board members or the president's mental processes would be impacted by release of the information. The Agency bears the burden of demonstrating that disclosure of such information "would actually inhibit candor in the decision making process." *Army Times Publishing Co. v. Department of the Air Force* (998 F.2d 1067, 1070 (D.C. Cir. 1993) (agencies must show how process would be harmed where some factual material was released and similar factual material was withheld); *see also American Petroleum Inst. V. EPA*, 846 F. Supp 83, 90-91 (D.C. Cir. 1994) (agency ordered to show how factual information could reveal deliberative process).

There is no declaration from a former selection board member describing how release of the information would have impacted what he said or discussed during the deliberations. There is no declaration from a former president describing how release of the information would have impacted how he selected the sampling. There is no declaration from a potential board member or president on how release of the information might impact discussion. In sum, there is no evidence in the record that any deliberations would be negatively affected by release of the requested information. The requested documents must be produced.

### E. Master Brief Sheets of Sampling Available to Plaintiff in Litigation.

The touchstone of Exemption 5 is whether the requested documents "would not be available by law to a party ... in litigation with the agency." 5 U.S.C. § 552(b)(5). The Master Brief Sheets of the sampling would be available to a plaintiff in litigation with the agency. This is why Plaintiff emphasizes the finality of the decision in regard to the

9

selection of the sampling and the fact that it fulfills a different statutory purpose. Specifically, 10 U.S.C. § 628 allows for judicial review of the decision of a Special Selection Board to not recommend an officer referred to such a board for promotion. As such, a plaintiff seeking review under 10 U.S.C. § 628 must be able to obtain the sampling to argue whether the agency decision can survive judicial review.[4]

Despite the judicial review provisions of 10 U.S.C. § 628, there may be some situations in which the APA would provide a broader scope of review. *See Richey v. United States*, 322 F.3d 1317, n. 3 (Fed. Cir. 2003). Historically, courts have reviewed SSB decision under the APA. *See Kreis v. Secretary of Air Forec,* 866 F.2d 1508 (D.C. Cir 1989). Under the APA, the agency would be required to produce an administrative record, which would include the sampling. There is simply no other way by which a court could determine whether the agency's decision was in compliance with the standards of the APA.

## II. EXEMPTION 3 DOES NOT PROHIBIT RELEASE OF THE REQUESTED DOCUMENTS.

Defendants again argue that the documents are "proceedings" within the meaning of 10 U.S.C. 618(f). In Opposition, Defendants' main argument, relying on *Chevron*, is that the documents are "proceedings" because the agency says they are "proceedings."

---

[4] Review under 10 U.S.C. § 628 is similar to that under the Administrative Procedures Act (APA) (5 U.S.C. § 701 *et. seq.*). Discovery in APA cases is limited, but not necessarily foreclosed, because of the requirement for production of an administrative record. The contours of 10 U.S.C. § 628 are less clear. If the agency produced an APA-like administrative record, it would include the sampling as this is the criteria upon which the decision was based. There is no other way by which the court could effectively review the decision. Conversely, if the agency chose not to produce an administrative record by arguing that the APA standard was not applicable, a plaintiff would be entitled to discovery and would be able to obtain the documents comprising the sampling.

10

Defendants also cite to certain agency regulations in support of this argument.

### A. "Proceedings" Is Not Ambiguous.

Before deciding whether the Agency's construction of a statute gets any deference, the Court must determine if Congress addressed the issue. This is because the judiciary is the final authority on statutory construction when congressional intent is clear. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 107 S.Ct.1207, 94 L.Ed 434 (1987). The term "proceedings" as used in the statute is not ambiguous.

In their motion for summary judgment, Defendants used Black's Law Dictionary to define "proceedings." Plaintiff demonstrated why this was strained and cited to Webster's Third New International Dictionary (1993) in which "proceedings" means "a particular way of doing or accomplishing something." It also defines "proceedings" as "an official account (as in a book of minutes) or thing said or done (as at a meeting or convention of a society)." The common understanding of "proceeding," as opposed to a legal definition, is more attuned with Webster's and more descriptive of what occurs in the selection board process. The point being that Congress would have intended the plain meaning of the language.

This view is also consistent with the Secretary's interpretation of proceeding in *Miller v. Department of the Navy*, 338 F. Supp. 2d 5 (D.D.C. 2005) in which he asserts that is it the actual discussion of the board members that is to be protected from disclosure. Quite simply, it defies logic to say that documents are "proceedings" unless the documents record the proceedings themselves such as a transcript that records the actual deliberations. Defendants' argument is simply that Congress did not include a definition of the term "proceeding" which necessarily means that the term is ambiguous.

11

Def. Opp., p. 19. Under this construction, every statute would always be ambiguous unless Congress provided a definition for every term. This goes too far. The term should be given its common meaning which renders the statute unambiguous.

### B. Agency Is Not Entitled to *Chevron* Deference.

The Agency's argument that its construction of the statute is entitled to *Chevron* deference fails to account for the holding in *United States v. Mead Corp.*, 533 U.S. 218, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). In *Mead* the Court modified the *Chevron* framework by making it presumptively inapplicable to non-legislative rules. In *Mead*, the Court held that informal interpretations do not receive *Chevron* deference. Thus, *Chevron* deference is not given to non-legislative rules. The *Mead* Court held that *Chevron* applies only "when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, *and* that the agency interpretation claiming deference was promulgated in the exercise of that authority." *Id.* at 226-27 (emphasis added); *AT & T Corp. v. FCC,* 349 F.3d 692, 698-99 (D.C.Cir. 2003) ("*Chevron* deference is due ⋯ only if the agency has acted pursuant to 'delegated authority' and the agency action has the 'force of law.' " (citations omitted)). Such delegation may be shown in a variety of ways, as by an agency's power to engage in adjudication or notice-and-comment rulemaking, or by some other indication of comparable congressional intent. *Mead* at 227. There is no evidence that Defendants have been so empowered

Defendants cite to *Small v. United States*, 158 F.3d 576 (Fed. Cir. 1998), cert. denied 528 U.S. 821 (1999) and *Curtis v. Peters*, 107 F.Supp. 2d 1 (D.D.C. 2000) for the proposition that the Secretary's view is entitled to *Chevron* deference. Def. Opp., p. 20. However, these cases are of questionable authority as they predate *Mead.* Further,

Defendants' present interpretation of the word "proceeding" was not developed through formal adjudication or notice-and-comment rulemaking. As such, Defendants argument that it is entitled to *Chevron* deference is untenable.

### C. Agency Not Entitled to *Skidmore* Deference.

Although the agency's interpretation cannot be given *Chevron* deference, the Agency's view is eligible to claim respect according to its persuasiveness. *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S. Ct. 161, 89 L. Ed. 124 (1994). The weight to be given by the court to the administrator's ruling is dependent upon the thoroughness evident in its consideration, validity of its reasoning, and its consistency with earlier and later pronouncements. *Id.* Given this criteria, Defendants' view is entitled to no deference.

#### 1. Defendants Not Entitled to Deference as This Issue is not of a Military nature.

Defendants argue that their view should be granted deference given it was made by the military and noting a court's general reluctance to interfere with "military functions." Def. Opp., p. 21. Each of Defendants' cited cases in inapposite. The case at bar is not a "military functions" case. Plaintiff is not seeking to alter the functions of the military , change a military decision, or have the Court run the military personnel system. Plaintiff's case is a claim under the FOIA and merely requires application of administrative law principals to the facts presented by the parties. The Court is, undoubtedly, thoroughly familiar with these principals and is not required to grant any deference to the military as requiring its special competence.

#### 2. Agency Regulations do not Define Parameters of 10 U.S.C. § 618(f).

Defendants argue that their policies demonstrate that the Master Brief Sheets are