"proceedings." This argument suffers from a fatal flaw. It assumes that the agency regulations prohibiting disclosure by board members are co-extensive with the prohibition of 10 U.S.C. § 618(f). While there may be overlap, the prohibition against release of information by board members imposed by agency regulations is broader than contemplated by 10 U.S.C. § 618(f). This is conclusively demonstrated by the evidence.

Defendants states that "Board members are charged to brief the members and recorders of the board, both upon convening and immediately prior to adjournment, that proceedings, deliberations, *materials and any other information pertaining to the board* are not releasable except as authorized by the Secretary of the Navy, the Secretary of Defense, or the President." Def. Opp., p. 22, (emphasis is Defendants' Brief) citing MCO P1400.21 B, ¶ 4001. Defendants also cite to a Department of the Army memorandum that states "Board members will not disclose statistical analyses, details of the board proceedings, or specifics pertaining to selection or non-selection of individual officers unless authorized to do so by proper authority." *Id.* There is no indication in these regulations, promulgated under the authority of the applicable Secretary, that these restrictions are required by 10 U.S.C. § 618(f). Again, certain of these would be required, but it is apparent that these are not co-extensive.

Specifically, the army memo prohibits release of "statistical analyses" by the board members. However, the Secretary of the Navy publishes detailed statistical analyses of the board results. *See* Pl. Ex. 7 and 8 (Statistics from the FY 2004 and 2005 lieutenant colonel promotion board). Defendants admit that they publish statistical information pertaining to the selection board results. Pl. Undisputed Facts, ¶ 13. Given these facts Defendants cannot logically argue that 10 U.S.C. § 618(f) prohibits release of

14

"statistical analyses." This proves that the army regulation does not define what is considered a "proceeding" under 10 U.S.C. § 618(f).

In a similar manner MCO P1400.21 B, ¶ 4001 prohibits release of board "material." As Defendants note in their Motion for Summary Judgment, "when a promotion board is convened, the members of the selection board are provided with certain material. These materials include the selection board's precept, the eligible officer's official military personnel files, and their corresponding Master Brief Sheets." Def. S.J. Mot., p. 7. It follows that the board's precept is "material" with the meaning of MCO P1400.21B. As such, the board members are prohibited from releasing the precept. However, the Secretary publishes the board's precept to the public after the selection board concludes. Pl. Undisputed Facts, ¶ 6; *see* .Pl. Ex. 4 and 6. If the precept were a "proceeding," even the Secretary could not release it because of the restriction in 10 U.S.C. § 618(f). This amply demonstrates that the prohibitions imposed on the board members by agency regulation are not co-extensive and do not define what is releasable to the public under 10 U.S.C. § 618(f).

### 3. Not "Official Interpretation."

In footnote 11, defendants cite to *U.S General Services Admin. v. Fed. Labor Relations Auth.*, 86 F.3d 1185 (D.C. Cir. 1996) for the proposition that a court will defer to an agency's interpretation of if its own statute if the court is assured it is the official interpretation. The Court has no such assurance in this case. Each of the other military service secretaries is empowered to convene selection boards pursuant to 10 U.S.C. § 611. Defendants even cite to a Department of the Army regulations to support its interpretation of the meaning of "proceeding." *See* Def. Attch. R. It is apparent that the

issue of what constitutes a "proceeding" under 10 U.S.C. § 618(f) cuts across all of the military services. There is no indication that the Secretary of the Navy has been given any authority to provide an official interpretation as to the definition of "proceeding." An official interpretation upon which the Court could rely should be issued by the Secretary of Defense. Defendants' argument must also be viewed in light of the current litigation.

### D. Sampled Master Brief Sheets Are Not Covered by 10 U.S.C. § 618(f).

10 U.S.C. § 618(f) states:

> Except as authorized or required by this section,
> proceedings of a selection board convened under section
> 611(a) of this title may not be disclosed to any person not a
> member of *the* board. 10 U.S.C. 618(f) (emphasis added).

As articulated in paragraph I, *supra*, the selection of the sampling of records is made to fulfill the statutory requirements of 10 U.S.C. § 628. The selection of the sampling is a separate process and is not a function of the selection board convened under 10 U.S.C. § 611. The officers selected as members for the special selection board convened under 10 U.S.C. § 628 are not the same officers who sat on the regular promotion board convened under 10 U.S.C. 611. *See* Def. Attch. T, p. 29, ¶ 24.g. Thus, if the Master Brief Sheets of the sampling were "proceedings of a selection board convened under 611(a)," the literal reading of the 10 U.S.C. § 618(f) would prevent the members of a Special Selection Board from viewing the sampling of records. This is, obviously, an absurd result as the board members comprising the Special Selection Board are *required* to compare the sampling of records with the officer's records referred to the Special Selection Board. 10 U.S.C. § 628. *This conclusively demonstrates that the Master Brief Sheets of the sampling of records cannot be "proceedings" under 10 U.S.C. § 618(f) and Exemption 3 cannot be used to withhold the documents.*

16

**E. Release of Promotion Board Precept is Inconsistent with Defendants' Decision to Withhold the Master Brief Sheets.**

It is undisputed that selection board members are provided, *inter alia,* with the precepts and copies of the Master Brief Sheets. Def. S.J. Mot., p. 7-8. Defendants admit that the "[m]embers of the selection board use the precept, as well as the officer's military personnel file and Master Brief Sheet, during their deliberations to determine which officers should be promoted." Pl. Undisputed Facts ¶ 11. It is, or least was, Defendants' view that "the Master Brief Sheets, along with any other information which is used and discussed during the selection board's deliberative process, should not be disclosed." Def. S.J. Mot., p.10. Given this position, there is no basis for treating the precept and the Master Brief Sheets differently in regard to release to the public.

Defendants admit the precepts of the board are made available to the public on the internet. Pl. Undisputed Facts ¶ 12. Given that the precept is released to the public and the prohibition against releasing board "proceedings" within the meaning of 10 U.S.C. § 618(f), it must follow that the precept is not a "proceeding." As such, the Master Brief Sheet cannot be a "proceeding."

In Opposition Defendants attempt to narrowly construe the importance of the precept and attempt to characterize the document as merely ministerial or administrative in form. *See* Def. Opp., p. 27. This belies Defendants' admission that the "[p]recepts include detailed guidance on how the board is to proceed and includes factors that the board members can and cannot consider." Pl. Undisputed Facts ¶ 12. The point is that the board members could not hold intelligent discussions about whether a particular officer should be selected for promotion without reference to the precept. The precept is as much a part of the board "proceedings" as the Master Brief Sheets.

Despite the logical conclusion that the documents should be similarly treated, Defendants now argue that their disparate treatment of the Masters Brief Sheets and the precept is justified because they are "fundamentally different." Def. Opp., p. 27. This difference was not apparent in Defendant's motion for summary judgment. Regardless, Defendants now take the position that the precept was released so as to demonstrate the "integrity" of the promotion system but that since the Master Brief Sheets contain "key personal data and a summary of [each officer's] entire performance record, there is no equivalent reasons to release it to the public." Def. Opp., pp. 27-28.

In taking this position, Defendants conflate the issue of whether the Master Brief Sheets are properly withheld under Exemption 3 or Exemption 6. Specifically, it is irrelevant to a determination under Exemption 3 whether the document contains personal information. Personal information is only implicated when Exemption 6 is invoked. Again, there can be no logical distinction between the precept and the Master Brief Sheets in relation to whether they are considered "proceedings" within the meaning of 10 U.S.C. § 618(f). The mental gymnastics in trying to articulate a meaningful difference between the two documents, making one a "proceeding" and the other not a "proceeding," demonstrates the weakness of Defendants' argument.

## II. EXEMPTION 6 DOES NOT APPLY AS NO PRIVACY INTEREST IS IMPLICATED BY RELEASE.

For Exemption 6 to apply, the information must be identifiable to a *specific* individual. Information pertaining to a single individual whose identity cannot be determined after deletion of his name from the records does not qualify for Exemption 6 protection. *See Citizens for Envtl. Quality v. USDA*, 602 F.Supp. 534, 538-39 (D.D.C. 1984)(ordering disclosure of health test results because identify of only agency employee

18

tested could not, after deletion of his name, be ascertained from information known outside of agency)(citing *Department of the Air Force v. Rose*, 425 U.S. 352, 380 n. 19 (1976)(dicta).

Defendants admit that "[g]iven the level of redaction of the document, the remaining information contained within the document could not be associated with a particular individual." Pl. Undisputed Facts, ¶ 2; *see* Def. Attch. C (redacted Master Brief Sheet). Defendants' claims as to a hypothetical injury to a speculative privacy interest are too tenuous to warrant withhold the documents. *See National Association of Retired Federal Employees v. Horner*, 879 F.2d. 873 (D.C.Cir.1989).

As a matter of law, there is not a privacy interest in this case, further analysis is unnecessary, and the information at issue must be disclosed. *See Ripskis v. HUD*, 746 F.2d 1,3 (D.C. Cir. 1984); *Holland v. CIA*, No. 91-1233, 1992 WL 233820, at *16 (D.D.C. Aug 31, 1992) (stating information must be disclosed when there is no significant privacy interest, even if public interest is also de minimis).[5]

## V. Government's Interpretation of the Case Law.

**A. *In Re England*.** In *In re: Gordon R. England, Secretary of the Navy, et. al., Petitioners*, 375 F.3d 1169 (D.C. Cir. 2004), Plaintiffs sought to have the board members "*testify* about selection board proceedings leading to the challenged decisions. *Id*. at 1170 (emphasis added). In opposition, the Secretary of the Navy argued that Section 618(f) "creates a privilege that protects the *deliberations* of military promotion

---

[5] While irrelevant to the analysis if no privacy interest is implicated, Defendants appear to concede that the information would shed light on how the agency is fulfilling its statutory duties but takes issue with Plaintiff's request for only two board samplings. *See* Def. Opp. p. 25. Plaintiff is willing to accept whatever Defendants would consider to be a sufficient number to shed light on the Agency's activities.

boards from disclosure." *Id.* at 1176 (emphasis added). According to the Secretary
"[f]ree, uninhibited, and candid *deliberations* by the selection board . . . are vital to the
effective functioning of the selection board process." *Id.* (emphasis added). The Court,
in addressing whether to apply the collateral order doctrine, found that the Navy's claim
of statutory privilege would be destroyed if the board members were required to "testify."
*Id.* The Secretary explained "[s]election board members will be less likely to engage in
frank and open *discussion* if such *discussions* will be open to public scrutiny." *Id.* at
1178 (emphasis added). Based on this case and the Secretary's articulation of the
interests to be protected by 10 U.S.C. § 618(f), it is clear that the interest is the actual
discussions and deliberations of the board members. The case cannot be interpreted to
say that documents considered by the board constitute "proceedings" within the meaning
of 10 U.S.C. § 618(f)

In Opposition the Defendants do not explain how the facts of the case lead to their
conclusion that documents are considered "proceedings." Defendants do say, however,
that the "solution to the confidentiality issue was not selective disclosure of materials
from those proceedings." Def. Opp. p. 29. Plaintiff merely notes that this was not a
holding of the Court in *In re England.*

**B. *Miller v. Department of the Navy.*** Defendants' motion for summary
judgment states that "the disclosure of the information contained in the Master Brief
Sheets considered by a promotion selection board would not only prevent frank and open
discussion by board members, but would inhibit frank and open evaluation of officers by
their first and second level supervisor in formulating their performance evolutions." Def.
S.J. Mot., p. 11. Defendants then cites the Court to "*See Miller v. Dep't of the Navy,* 338

F.Supp.2d5 (D.D.C. 2005)(court recognized the policy interest of the Navy in 'encouraging open, frank discussions' in selection board proceedings.)" Plaintiff argued that, while the parenthetical is accurate, the case does not support the averment. Pl. Mot. Sum Jud., pp. 11-12. In Opposition, Defendants do not address why disclosure of the information contained in the Master Brief Sheets would inhibit the frank and open discussion by the board members. Defendants do not address why disclosure of the information contained in the Master Brief Sheets would inhibit the frank and open evaluation of supervisors or why that has any relevance to withholding under 10 U.S.C. § 618(f). Instead, Defendants use the case to argue that the requested documents are properly withheld under Exemption 3 and Exemption 5.

In *Miller*, the military member sought a copy of an unredacted version of an Inspector General (IG) report regarding the military member's claims of improprieties before a selection board that was considering the member for promotion. Miller was provided a redacted copy of the IG report. Miller filed a Privacy Act appeal to obtain an unredacted version. This was denied by the Agency. The Court upheld the Agency's denial under both Exemption 3 and Exemption 5. Plaintiff has already extensively examined why Exemption 3 and Exemption 5 are not applicable to his request. As such, Plaintiff will simply distinguish this case.

The IG report included analysis of the "tank sessions" conducted during the promotion board. *Id*. at p. 17. "Tank sessions" were particular sessions of the promotion board in which a particular candidate's qualifications would be considered. *Id*. The IG report analyzed the "records" from each tank session. *Id*. The records analyzed by the IG must have contained specifics discussions and deliberations by the board members

21

concerning the qualifications of particular candidates. It appears that based on this analysis the IG came to the conclusion that Miller was "not selected because of her failure to perform at a consistently outstanding level and to perform in arduous duty assignment." *Id.* at 8. Further, it is apparent that the IG discussed the board's deliberations and procedures with board members given the IG substantiated the finding that one of the members violated his oath. *Id.* at 8.

Under these facts it was appropriate to redact the IG report under Exemption 3 and 5. Release of the IG report would have provided Miller with the identifies and thought processes and discussion of the particular board members concerning her qualification as well as those of other officers. This is the very interest to be protected by the statute, e.g. "frank and open discussion" among the members. This case also shows that documents that constitute "an official account (as in a book of minutes) or things said or done (as at a meeting or convention of a society)" are properly considered "proceedings". *See* Webster's Third New International Dictionary (1993). As already demonstrated in addressing the applicability of Exemption 3 and Exemption 5, the interest to be protected in *Miller*, is not implicated by release of the Master Brief Sheets.

*C. Curtis v. Peters.* Defendants motion for summary judgment argued that "[i]n addition, preventing disclosure of information considered by selection boards ensures that 'decisions [regarding] who should be in military leadership positions and . . .the qualifications of candidates for such positions [are] left to the expertise of the military and [not open to public scrutiny]'" and cite to *Curtis v. Peters*, 107 F. Supp.2d 1,9 (D.D.C. 2000) citing *Kreis v. Secretary of the Air Force*, 866 F.2d 1508, 1514 (D.C.Cir. 1989). Def. S.J. Mot., p. 12. Plaintiff took issue with reliance on this case for two

reasons. Pl. Mot. Sum Jud., p. 13. First, the issue in *Curtis* was the appropriateness of a selection board using a particular standard, i.e. a reasonable doubt standard, in selecting officers for promotion. As such, the case is inapposite to the current facts and does not support the position propounded by Defendants. In Opposition, Defendants retort that they cited *Curtis* "to emphasize the fact that courts have determined that decisions regarding whether candidates are suitable for military leadership positions should be left to the military." Def. Opp., p. 31. Again, *Curtis* is inapposite in this FOIA action. It is not a case in which Plaintiff seeks review of a military function.

Second, Plaintiff took issue with the words contained in the bracketed material as Defendants substituted "not open to public scrutiny" for "not made by the courts." An agency has a legitimate interest in withholding information that is properly exempt under FOIA and that the agency has a right to be free from undue interference in its decisions. However, the implication in the substituted language is that the agency wants to be secretive with its processes and not fully explain them unless it is required to do so by a court. Suffice it to say that this is not in keeping with the spirit and intent of the FOIA.

Defendants also cite to *Curtis* for a new proposition that when the agency's interpretation of a statute is longstanding and consistent the Court should defer to the agency interpretation. Def. Opp. p. 31, citing *Curtis*, 107 F. Supp. 2d at 6. Defendants then argue that the Navy's non-disclosure of "board proceedings" existed long before the codification of the practice in 1980. Def. Opp., p. 31. Defendants then argue that their determination that the Master Brief Sheets are "proceedings" is entitled to deference. *Id.* This is circular and adds nothing to the argument as to whether the documents are properly considered "proceedings." This issue was sufficient analyzed above.

23

## VI. INFORMATION SOUGHT BY PLAINTIFF IS EASILY SEGREGABLE.

In Opposition, Defendants highlight the requirement that, even when a particular exemption applies to a document, the agency is under an affirmative duty to provide any data that is segregable and would otherwise be properly releasable under FOIA. In regard to Exemption 6, there might have been an issue with segregability if Plaintiff requested the entire, unredacted Master Brief Sheet. However, given the level of redaction and Defendants' admission that the remaining information contained within the document could not be associated with a particular individual (Pl. Undisputed Facts, ¶ 2), segregability is not implicated.

In regard to Exemption 3, segregability is not an issue. Either 10 U.S.C. § 618(f) applies to the document or it does not. Plaintiff has already demonstrated why Exemption 3 is not applicable.

Segregability is an issue under Exemption 5. If the Court concluded that the Master Brief Sheets were covered by the exemption, Defendants would be required to release any segregable material. Defendants claim that the factual material sought to be released is so "inextricably intertwined with the deliberative material, that it cannot be reasonably segreagetd and released." Def. Opp. p. 32. This argument fails to account for the fact that Defendants already publicly release certain information that is on the Master Brief Sheet. Pl. Undisputed Facts ¶ 13; *see* Pl. Ex. 7 and 8 (Statistics of Promotion Board Released by Defendants). Defendant's conclusory allegations are insufficient. *See Army Times Publishing Co. v. Department of the Air Force* (998 F.2d 1067, 1070 (D.C. Cir. 1993 (agencies must show how process would be harmed where some factual material was released and similar factual material was withheld)

24

## VII. CONCLUSION

The fundamental purpose of the FOIA is to assist citizens in discovering "what their government is up to." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 773, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). The FOIA therefore strongly favors openness, since Congress recognized in enacting it that an informed citizenry is "vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978); *see also Dep't of the Air Force v. Rose,* 425 U.S. 352, 360, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976) (purpose of the FOIA is "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny"). As such, "the Act is broadly conceived," *EPA v. Mink,* 410 U.S. 73, 79-80, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973), and "disclosure, not secrecy, is the dominant objective of the Act." *Dep't of the Air Force v. Rose,* 425 U.S. at 361.  None of the Exemptions claimed by Defendants apply to Plaintiff's request and, in keeping with the intent of the FOIA, must be released.

Respectfully submitted,

Dated:  September 22, 2006

Jackson L. McGrady
Plaintiff, *Pro Se*
820 Bright Street
Fredericksburg, VA 22401
540.371.3792

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of September, 2006, I, J. L. McGrady, sent by first class U.S. mail, postage prepaid, a copy of Plaintiff's **PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** to the following addresses:

Clerk of Court
United States District Court
for the District of Columbia
333 Constitution Ave., NW
Washington DC 20001

Mr. K. L. Wainstein
U.S. Attorney for the District of Columbia
555 4th St. NW
Washington, DC 20530

J. L. MCGRADY
Plaintiff, *Pro Se*
820 Bright Street
Fredericksburg, Virginia 22401
540.371.3792

1