**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JACKSON L. MCGRADY,<br><br>            Plaintiff,<br><br>   v.<br><br><br>Ray Mabus,[1]<br>Secretary of the Navy,<br>and<br>DEPARTMENT OF THE NAVY,<br><br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 06-752 (GK) |

**AMENDED MEMORANDUM OPINION**

Plaintiff Jackson L. McGrady brings this action, pro se,[2] against Defendant Ray Mabus, Secretary of the Navy, and Defendant Department of the Navy ("Navy"), pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.[3]

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Secretary of the Navy Ray Mabus is automatically substituted as Defendant for former Secretary of the Navy Donald C. Winter.

[2] Plaintiff may be pro se but his pleadings were as clear, well-written, and well-reasoned as those submitted by most practicing lawyers. There is some documentary evidence to suggest that he is a lawyer. See Pl.'s Mot., Ex. 2.

[3] Plaintiff has also filed a related suit against the same Defendants. See Civil Action No. 05-1651. In that case, Plaintiff filed suit challenging Defendants' denial of his request to convene a Special Selection Board after he was not selected for promotion to Lieutenant Colonel.

This matter is now before the Court on Defendants' Motion for Summary Judgment [Dkt. No. 7] and Plaintiff's Cross-Motion for Summary Judgment [Dkt. No. 8]. Upon consideration of the Motions, Oppositions, Replies, the entire record herein, and for the reasons stated below, Defendants' Motion is **denied** and Plaintiff's Cross-Motion is **granted**.

## I. Background[4]

In the Navy, a Selection Board determines which officers should be promoted. After the Board meets, it releases a public statement listing the officers selected for promotion. It also releases statistics on the selected officers, including their occupational specialties and educational background.

During such proceedings, Selection Board members use Master Brief Sheets to aid their promotion determinations. The Master Brief Sheets include "key personnel data and a summary of an officer's entire performance evaluation record."[5] Defs.' Opp'n at

---

[4]   Unless otherwise noted, the facts set forth herein are undisputed and drawn from the parties' Statements of Undisputed Material Facts submitted pursuant to Local Civil Rule 7(h) and the parties' summary judgment papers.

[5]   A Master Brief Sheet is available for each officer in the Marine Corps. It is generated by the Optical Digital Imaging Records Management System. Using this system, officers may access their own Master Brief Sheets. The personnel data on the Master Brief Sheets includes the officer's occupational specialty and education level. The performance evaluation data includes Value Distribution Markings and Comparative Assessments. The Value Distribution Markings are ratings made by a reviewing officer, ranging from unsatisfactory to outstanding. Comparative

7.   At the conclusion of the proceedings, the President of the Selection Board chooses a "sampling" of the Master Brief Sheets of officers selected and not selected for promotion, as those "most representative of the Board's deliberations and recommendations." Id. at 8-9.  These are known as Sampled Master Brief Sheets.  Id.

The Sampled Master Brief Sheets are stored in a limited access database and are used only during Special Selection Board proceedings.  A Special Selection Board is convened only when the Secretary of the Navy determines that there was an "administrative error" or "material unfairness" during a particular Selection Board proceeding.  At a Special Selection Board proceeding, the records of the individual in question are compared with the Sampled Master Brief Sheets.  The Sampled Master Brief Sheets "provide the Special Selection Board with 'a relative base [which indicates] which eligible officers, in the opinion of a majority of the members of the board, [were] fully qualified for promotion.'" Id. at 10 (internal quotation marks and citations omitted).

On September 28, 2005, Plaintiff wrote the Commandant of the United States Marine Corps requesting information relating to Selection Boards that met in 2004 and 2005.  Specifically, he requested the following three items:  (1) redacted copies of all Master Brief Sheets of the officers recommended for promotion by

_____

Assessments are ratings on an alphabetical scale that are assessed in relation to other officers.  Defs.' Opp'n at 7 & nn.2-4.

the Fiscal Year 2004 and 2005 Lieutenant Colonel Selection Boards, (2) redacted copies of all Master Brief Sheets of the officers not recommended for promotion by the 2004 and 2005 Lieutenant Colonel Selection Boards, and (3) a copy of the precepts[6] from the Fiscal Year 2004 and 2005 Lieutenant Colonel Selection Boards.  The request included both Master Brief Sheets and Sampled Master Brief Sheets.[7]

In a letter dated October 5, 2005, Defendants informed Plaintiff that his request could not be processed within the prescribed time period and advised him that this result could be treated as an appealable adverse determination.  On October 13, 2005, Plaintiff filed an appeal.

Before the appeal could be resolved, Defendants informed Plaintiff that they had reached a decision partially denying his request.  In a letter dated November 17, 2005, Defendants informed Plaintiff that the Board precepts he requested were publicly available on a Marine Corps Promotion Branch website.

---

[6] A precept is a document that "provides the selection board with specific instructions regarding how the selection board should be conducted," "as well as the substantive information to be considered."  Defs.' Opp'n at 6, 27 (internal citations omitted). It "includes factors that board members can and cannot consider in making their selection decisions."  Pl.'s Mot. at 4.

[7] Unless otherwise specified, the term "Master Brief Sheets" is used herein to refer to both Master Brief Sheets and Sampled Master Brief Sheets.

The letter also stated that although Defendants had located the Master Brief Sheets that Plaintiff requested, they could not be released because they were "proceedings," exempted under 5 U.S.C. § 552(b)(3), and their release was prohibited under 10 U.S.C. § 618(f).[8]

In a letter dated January 4, 2006, Plaintiff filed an administrative appeal. On February 23, 2006, Defendants denied the appeal. Plaintiff filed his pro se Complaint in this Court on April 25, 2006.

---

[8] After the parties completed briefing on the pending Motions, Congress repealed 10 U.S.C. § 618(f) and replaced it with 10 U.S.C. § 613a. Section 618(f) had stated that "proceedings of a selection board convened under section 611(a) of this title may not be disclosed to any person not a member of the board." 10 U.S.C. § 618(f). The newly enacted Section 613a states that "proceedings of a selection board convened under section 611 of this title may not be disclosed to any person not a member of the board." Congress passed the new statute on October 17, 2006 as part of the National Defense Authorization Act for Fiscal Year 2007. Pub. L. No. 109-364, § 547, 120 Stat. 2216 (2006); Defs.' Notice of Supplemental Authority (Oct. 29, 2008) [Dkt. No. 16].

Briefing on the present Motions was completed on September 25, 2006. Apart from Defendants' Notice of Supplemental Authority, neither party has submitted any briefing on the issue of whether the changes to the statute impact the issues in this case, although the relevant language of both statutes appears to be identical. When a statute is enacted after the events in issue and Congress has not "expressly prescribed the statute's proper reach," a court must "determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." Landgraf v. USI Film Prods., 511 U.S. 244, 280 (1994). Because the statutes are substantively similar and therefore do not substantively alter the parties' rights, it is clear that 10 U.S.C. § 613a does not have retroactive effect. Accordingly, the relevant statute in this case is 10 U.S.C. § 618(f).

## II.  Standard of Review

FOIA "requires agencies to comply with requests to make their records available to the public, unless the requested records fall within one or more of nine categories of exempt material." Oglesby v. Dep't of the Army, 79 F.3d 1172, 1176 (D.C. Cir. 1996) (citing 5 U.S.C. §§ 552(a), (b)).

In a FOIA case, the district court conducts a de novo review of the government's decision to withhold requested documents under any of the statute's nine exemptions.  5 U.S.C. § 552(a)(4)(B).  An agency that withholds information pursuant to a FOIA exemption bears the burden of justifying its decision.  Petroleum Info. Corp. v. Dep't of the Interior, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (citing 5 U.S.C. § 552(a)(4)(B)).

In a FOIA case, a court may award summary judgment solely on the basis of information provided in affidavits or declarations when they (1) "describe the documents and the justifications for nondisclosure with reasonably specific detail;" (2) "demonstrate that the information withheld logically falls within the claimed exemption;" and (3) "are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).

## III.  Analysis

FOIA "mandates a strong presumption in favor of disclosure." Multi Ag Media LLC v. Dep't of Agriculture, 515 F.3d 1224, 1227 (D.C. Cir. 2008) (internal quotation marks omitted). Nonetheless, an agency may withhold information that falls within one of the statute's nine enumerated exemptions. August v. FBI, 328 F.3d 697, 699 (D.C. Cir. 2003). These exemptions were "designed to protect those legitimate governmental and private interests that might be harmed by release of certain types of information." Id. (internal quotation marks omitted). Because the statute favors disclosure, the exemptions "must be narrowly construed." Multi Ag Media LLC, 515 F.3d at 1227 (internal quotation marks omitted).

In the present case, Defendants claim that three FOIA exemptions apply: Exemptions 3, 5, and 6.

**A.   FOIA Exemption 3**

FOIA Exemption 3 permits an agency to withhold information "specifically exempted from disclosure by statute . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3).

When the government alleges that it may withhold information pursuant to Exemption 3, "the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage." Goland v. CIA, 607 F.2d

-7-

339, 350 (D.C. Cir. 1987).  A statute qualifies as a withholding provision when it is "the product of congressional appreciation of the dangers inherent in airing particular data" and it "incorporate[s] a formula whereby the administrator may determine precisely whether the disclosure in any instance would pose the hazard that Congress foresaw."  Wisconsin Project on Nuclear Arms Control v. Dep't of Commerce, 317 F.3d 275, 280 (D.C. Cir. 2003).

Defendants argue that they must withhold the information Plaintiff requests because it is "specifically exempted from disclosure" by 10 U.S.C. § 618(f).  Defs.' Mot. at 8-9.  Section 618(f) stated that "proceedings of a selection board convened under section 611(a) of this title may not be disclosed to any person not a member of the board."  10 U.S.C. § 618(f).

Defendants argue that Master Brief Sheets and Sampled Master Brief Sheets are "proceedings" and are therefore protected by the statute.  See Defs.' Mot. at 9-10.  They contend that both types of information are "proceedings" because they "are a tool used during the promotion board process because they summarize important information regarding an officer's past performance, an integral part of determining which officers are best qualified for promotion."  Id. at 10.

In response, Plaintiff concedes that if the requested information constituted a proceeding, Defendants could properly withhold it.  Pl.'s Mot. at 5.  Plaintiff argues, however, that the

requested information is not within the purview of 10 U.S.C. § 618(f) because it is not a "proceeding" within the meaning of the statutory term.  Plaintiff makes two specific claims: first, the term's plain meaning indicates that none of the requested information is a proceeding, and second, Defendants' actual practices indicate that Master Brief Sheets and Sampled Master Brief Sheets are not "proceedings."

### 1.   Defendants' Interpretation of the Statutory Term "Proceedings" Is Entitled to <u>Chevron</u> Deference

In the absence of a definition of the term in the statute itself, Defendants rely upon Black's Law Dictionary to supply one. Defendants contend that the term "proceedings" refers to "[a]n act or step that is part of a larger action."  Defs.' Mot. at 10 (quoting <u>Black's Law Dictionary</u> 1241 (8th ed. 2004)).  Defendants argue that because Congress did not define the term in the statute, the term is ambiguous, and the agency's definition should apply. <u>See</u> Defs.' Opp'n at 20 (arguing that the agency's interpretation is entitled to deference pursuant to <u>Chevron U.S.A, Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984)).

The Supreme Court has "long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." <u>Chevron</u>, 467 U.S. at 844.  In accordance with this principle, a court must apply a two-part test to determine whether the agency's interpretation is entitled to deference.  <u>Id.</u> at 843.  A court first must determine

if the "statute is silent or ambiguous with respect to the specific issue before it." Id.; see also INS v. Aguirre-Aguirre, 526 U.S. 415, 424 (1999). If it is, then a court must determine "whether the agency's answer is based on a permissible construction of the statute." Chevron, 467 U.S. at 843. If the agency's interpretation is "reasonable," then it is entitled to deference. Sierra Club v. EPA, 536 F.3d 673, 677 (D.C. Cir. 2008).

As Defendants correctly argue, the term "proceedings" is ambiguous because Congress did not define it in the statute. Accordingly, it is necessary to apply the second prong of the Chevron test and determine whether the agency's definition of "proceedings" is reasonable.

Here, Defendants used Black's Law Dictionary to provide the definition of "proceedings." Plaintiff instead proposes two definitions from Webster's Third New International Dictionary as preferable alternatives: "a particular way of doing or accomplishing something" or "an official account (as in a book of minutes)." Pl.'s Mot. at 8-9.

Black's Law Dictionary is a well known legal reference dictionary which is widely relied upon by attorneys and courts. See,e.g., Melendez-Diaz v. Massachusetts, 129 S.Ct. 2527, 2532 (2009) (using Black's Law Dictionary to define the term "affidavit"); Karsner v. Lothian, 532 F.3d 876, 887 (D.C. Cir. 2008) (using Black's Law Dictionary to define the term "award").

In evaluating the choice between Black's Law Dictionary and Webster's Third New International Dictionary, it is clear that Defendants' choice of one of the definitions used in Black's is reasonable, and therefore is entitled to deference.

### 2.   Master Brief Sheets Do Not Fall Within Defendants' Definition of Proceedings

Even under Defendants' definition, however, a Master Brief Sheet is not a "proceeding."  To be considered a proceeding under the Black's Law Dictionary definition employed by Defendants, Master Brief Sheets would need to be an "act or step."  They are not.  They are simply a compilation of data, and a tool, albeit a very important one, used by Selection Boards.[9]  Plaintiff correctly states that "deliberation about the import of the data contained within the Master Brief Sheets could be a 'step in the proceeding'

_____

[9]   Defendants cite to several cases to bolster their claim that Master Brief Sheets are "proceedings." Defs.' Mot. at 10-11. One such case is In re England, 375 F.3d 1169 (D.C. Cir. 2004). Neither party contests the case's holding that "[d]isclosure of selection board proceedings in civil discovery would certainly undermine, if not totally frustrate, the purpose of Section 618(f)." Id. at 11 (quoting In re England, 375 F.3d at 1178).  Nor does either party contest that the information requested by the plaintiffs in that case -- testimony of Selection Board members about the Selection Board proceedings -- constituted part of the "proceeding."  While In re England affirms propositions on which both parties agree, it does not address the issue of what is encompassed in the term "proceedings" and therefore provides no support for Defendants' argument that Master Brief Sheets are "proceedings."

but the Master Brief Sheet itself cannot be." Pl.'s Mot. at 8.[10]
Master Brief Sheets are plainly factual material.[11]

Accordingly, under the definition employed by Defendants
themselves, Master Brief Sheets are not "proceedings" and therefore
do not fall within the scope of Section 618(f).

### 3. Defendants' Past Practices Demonstrate that Master Brief Sheets Are Not Proceedings

Plaintiff also alleges that Master Brief Sheets are not
"proceedings" because Defendants already make public similar types
of information, thereby acting inconsistently with the position
they are taking in this litigation. Pl.'s Mot. at 15-19.

---

[10] Defendants argue that the information withheld in Miller
v. Dep't of the Navy, 383 F. Supp. 2d 5 (D.D.C. 2005), rev'd on
other grounds, 476 F.3d 936 (D.C. Cir. 2007), is analogous to the
information at issue in the present case. At issue in Miller was
information redacted from a report by an inspector general. Id. at
7-8. The inspector general had been charged with reviewing whether
the Selection Board's decision was "materially unfair" because one
of the Selection Board members had conducted himself improperly
during deliberations. Id. This review would have required the
inspector general to examine the content of the Selection Board's
deliberations, and thus the court noted in a footnote that the
plaintiff had "provided the court with no reason" to conclude that
the requested information was not subject to withholding pursuant
to Exemption 3. See id. at 17 n.3. In contrast, the information
requested in this case does not involve the content of
deliberations.

[11] As the Government states in its Opposition, "a District
Court considering a FOIA action has 'an affirmative duty to
consider the segregability issue sua sponte.'" Defs.' Opp'n at 31
(citing Trans-Pacific Policing Agreement v. U.S. Customs Service,
177 F.3d 1022, 1028 (D.C. Cir. 1999)). Here, the Court is simply
segregating out what is purely factual data from the opinions,
conversations, and deliberations that are protected under Section
618(f).

First, Plaintiff claims that Master Brief Sheets cannot be withheld because precepts, which are similar to Master Brief Sheets, are made publicly available on the Internet by Defendants. Id. at 15-16. Precepts, like Master Brief Sheets, are provided to members of the Selection Board. Precepts, like Master Brief Sheets, are used by Board members during their deliberations. If precepts may be released then, according to Plaintiff, Master Brief Sheets may be released as well.

Defendants respond that precepts are distinguishable from Master Brief Sheets because Selection Boards use them for "direction regarding their duties as well as their oaths of confidentiality." Defs.' Opp'n at 27. Therefore, Defendants claim precepts are "fundamentally different from the 'materials and other information' that the board utilized in making its promotion recommendations." Id. Defendants also state that a precept is "issued in order to instruct each selection board on the manner in which to proceed," whereas a Master Brief Sheet contains "key personnel data and a summary of each officer's entire performance record." Id. (internal punctuation and citations omitted).

The distinctions cited by Defendants do not demonstrate any meaningful difference between precepts and Master Brief Sheets. Precepts, like Master Brief Sheets, are part of the Selection Board proceedings in that they provide information that shapes the conclusions reached by the Board. For example, they state the

-13-

number of officers that a Selection Board may select for promotion and the selection standard that the Board shall employ.  Pl.'s Mot., Ex. 6.  Specifically, a precept might require a Board to refrain from considering the marital status of an officer, but to "give due consideration to the needs of the Marine Corps for officers with particular skills."  Id.

If anything, the distinctions cited by Defendants suggest that precepts are more likely to be considered "proceedings" than are Master Brief Sheets.[12]  Unlike Master Brief Sheets, precepts do not simply provide a set of underlying facts.  Instead, they directly influence the process used by the Selection Board by determining the "manner in which to proceed."  Thus, given that the Navy does not consider precepts to be "proceedings" and permits their release, the agency has not offered any rational basis for disclosing them and refusing to disclose Master Brief Sheets which contain nothing but factual material.

Second, Plaintiff argues that Defendants do not treat Master Brief Sheets as "proceedings" because they release Master Brief Sheets to individual officers and make public some of the information that appears on them, such as occupational specialty

---

[12]  Defendants' argument that Master Brief Sheets contain "key personnel data" is not relevant to the analysis of whether Master Brief Sheets are non-disclosable proceedings under FOIA Exemption 3 and 10 U.S.C. § 618(f).  Instead, the disclosure of data that could be considered private is relevant to the analysis under Exemption 6. See infra III.C.

and education level.   If Master Brief Sheets and information contained in them are released in some circumstances, Plaintiff argues, then Defendants cannot claim that Section 618(f) bars their release in the circumstances presented in this case.

In response, Defendants contend that two sets of Navy regulations specifically prohibit the release of Master Brief Sheets.   The first, MCO P1400.31B, ¶ 4001 (2006), states that "Board presidents are charged to brief the members and recorders of the board . . . that proceedings, deliberations, <u>materials, and any other information pertaining to the board</u> are not releasable except as authorized by the Secretary of the Navy, the Secretary of Defense, or the President."  (emphasis added by Defendants).   The second, Department of Army Memo 600-2 ¶ 6.g. (1999), states that "Board members will not disclose statistical analyses, details of the board proceedings, or <u>specifics pertaining to selection or non-selection of individual officers</u> unless authorized to do so by proper authority."  (emphasis added by Defendants).

These regulations do not prevent release of Master Brief Sheets and Sampled Master Brief Sheets for two reasons.   First, Defendants concede that these two regulations are aimed not at regulating disclosure by the agency as a whole, but instead at preventing disclosure by individual Board members.   <u>See</u> Defs.' Opp'n at 22 ("This strict confidentiality <u>imposed on board members</u> prohibits them from disclosing how they used the information

provided in making their decisions to promote certain officers.")
(emphasis added).  It is self-evident that disclosure by Board
members presents issues distinct from official disclosure by the
agency.  If a Selection Board were to determine that one particular
officer should not be promoted, for example, the agency would have
a compelling interest in preventing dissenting Board members from
voicing their disagreement with the result.

Second, the regulations are not coextensive with Section
618(f).  If they were coextensive with Section 618(f), then neither
"materials" nor "any other information pertaining to the board"
could be released.  In actuality, however, the Navy releases
several different types of information considered at Selection
Board meetings.  See Pl.'s Mot., Exh. 7 (released information
includes the average "time in service," "age," and educational
level of the officers selected for promotion).  Additionally, as
discussed supra, the Navy makes precepts publicly available, even
though precepts contain detailed information about the structure
and criteria employed in Selection Board proceedings.  Precepts
clearly "pertain[]" to the Board.  Given that these two types of
information are released, Section 618(f) and the regulations cannot
be coextensive.  As a result, the regulations do not prevent the
release of Master Brief Sheets and Sampled Master Brief Sheets.

For these reasons, Master Brief Sheets are not "proceedings" and are not barred from release by FOIA Exemption 3 and 10 U.S.C. § 618(f).

**B.   FOIA Exemption 5**

FOIA Exemption 5 permits an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."   5 U.S.C. § 552(b)(5).   This Exemption incorporates the "deliberative process privilege," which "covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."   Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8-9 (2001) (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975) (internal quotation marks omitted)); see also Public Citizen, Inc. v. Office of Mgmt. & Budget, ___ F.3d ___, 2009 WL 1709216, at *7 (D.C. Cir. June 19, 2009).   In addition, the privilege covers information that "reflect[s] the personal opinions of the writer rather than the policy of the agency."   Morley v. CIA, 508 F.3d 1108, 1127 (D.C. Cir. 2007) (internal quotation marks and punctuation omitted). When the information at issue is "[f]actual material that does not reveal the deliberative process," it is not protected.   Id. (quoting Paisley v. CIA, 712 F.2d 686, 698 (D.C. Cir. 1983).

To invoke the deliberative process privilege, an agency must show that the requested material meets two requirements: it must be "both 'predecisional' and 'deliberative.'" Public Citizen, 2009 WL 1709216, at *7; see also In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir. 1997). Material is predecisional if "it was generated before the adoption of an agency policy." Judicial Watch, Inc. v. Food & Drug Admin., 449 F.3d 141, 151 (D.C. Cir. 2006) (quoting Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980)). To be predecisional, a "court must first be able to pinpoint an agency decision or policy to which these documents contributed." Morley, 508 F.3d at 1127.

Material is deliberative if "it reflects the give-and-take of the consultative process." Judicial Watch, 449 F.3d at 151 (internal citations and quotation marks omitted). It must also "reflect[] advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated, [or] the personal opinions of the writer prior to the agency's adoptions of a policy." Public Citizen, 2009 WL 1709216, at *7 (quoting Taxation With Representation Fund v. IRS, 646 F.2d 666, 677 (D.C. Cir. 1981)); see also Defs.' Opp'n at 13 (quoting Vaughn v. Rosen, 523 F.2d 1136, 1144 (D.C. Cir. 1975)).

One key factor is whether disclosing the requested information would "inhibit candor in the decision-making process." Army Times Pub. Co. v. Dep't of Air Force, 998 F.2d 1067, 1071 (D.C. Cir.

-18-

1993) (citing <u>Petroleum Info. Corp.</u>, 976 F.2d at 1435).   If
documents "neither make recommendations for policy change nor
reflect internal deliberations on the advisability of any
particular course of action, they are not predecisional and
deliberative." <u>Public Citizen</u>, 2009 WL 1709216, at *7.  Documents
that were once predecisional and deliberative but now reflect an
agency's "formal or informal policy on how it carries out its
responsibilities" are considered part of the agency's "working law"
and are not covered by the deliberative process privilege.  <u>Id.</u>;
<u>Coastal States Gas Corp. v. Dep't of Energy</u>, 617 F.2d 854, 866
(D.C. Cir. 1980) ("[E]ven if the document is predecisional at the
time it is prepared, it can lose that status if it is adopted,
formally or informally, as the agency position on an issue.").

### 1.   Master Brief Sheets Are Not Deliberative in Nature

Master Brief Sheets are clearly predecisional because they are
"generated" prior to the promotion determinations and are used
during the Selection Board proceedings as a tool for the Selection
Board.

For the deliberative prong, the central question is not
whether the information at issue bears a causal connection to a
final determination, but is rather whether the requested
information independently "reflects" the deliberative process
itself.  <u>See</u> <u>Public Citizen</u>, 2009 WL 1709216, at *8 ("Only those
portions of a predecisional document that reflect the give and take

of the deliberative process may be withheld.") (internal citations omitted).  Defendants contend that because the Master Brief Sheets are so "inextricably connected to the deliberative material," they are deliberative in nature and their release would "cause harm to the agency's deliberations."  Defs.' Opp'n at 16 (citing Wolfe v. Dep't of Health & Human Servs., 839 F.2d 768, 774 (D.C. Cir. 1998)).

Master Brief Sheets are used as a tool in the decision-making process, and serve as an important factor in the final promotion decision.  However, they reveal only the data used during the process, not the substance of the deliberations.  See Public Citizen, 2009 WL 1709216, at *9 ("[A]gencies must disclose those portions of predecisional and deliberative documents that contain factual information that does not inevitably reveal the government's deliberations.") (internal citations and quotation marks omitted).  Defendants' own definition of Master Brief Sheets suggests that they contain no information about the content of Selection Board proceedings, but rather provide only facts that are used during the proceedings.  Defs.' Opp'n at 7 ("Master Brief Sheets contain key personnel data and a summary of an officer's entire performance evaluation record.").  Thus, they are not deliberative in nature because they do not "make[] recommendations or express[] opinions" on the issue of a particular officer's fitness for promotion.  Vaughn, 523 F.2d at 1144.

In addition, it is unlikely that candor would be inhibited during Selection Board proceedings because releasing Master Brief Sheets reveals no information about the content of Board members' deliberations, or about the weight that a particular fact was given in a decision on any individual officer.

Finally, even if Master Brief Sheets were to satisfy the two prongs of the deliberative process inquiry, Exemption 5 covers only "memorandums or letters." Master Brief Sheets are neither. They are data. Therefore, they are not protected by Exemption 5.

For these reasons, Exemption 5 does not apply to Master Brief Sheets.

### 2. Sampled Master Brief Sheets Are Not Deliberative in Nature[13]

Defendants also argue that the Sampled Master Brief Sheets -- as opposed to Master Brief Sheets alone[14] -- present unique considerations. The President of the Board selects a sampling after he "compares, evaluates, and analyzes" the Master Brief Sheets and identifies those that are representative of the entire body of officers selected for promotion. The Sampled Master Brief Sheets are then stored in a confidential database for use in the event that the Navy holds Special Selection Board proceedings.

---

[13] It has come to the Court's attention that there was an error in this heading; it is corrected herein.

[14] See supra note 7.

-21-

First, Defendants correctly argue that the Sampled Master Brief Sheets are predecisional because "they are antecedent to any decision by the Navy regarding promotions."  Defs.' Opp'n at 15.[15]

Second, Defendants contend that because this process requires the president to "exercise[] his judgment," the Sampled Master Brief Sheets are deliberative in nature.  Id.  The Sampled Brief Sheets are not protected by the deliberative process privilege for three reasons.

First, the Sampled Master Brief Sheets are not deliberative. As our Court of Appeals has stated, the "first step in determining whether disclosure would harm the deliberative process is to examine the context in which the materials are used." Wolfe, 839 F.2d at 774.  In determining whether the deliberative process privilege applies, the inquiry must be conducted "in light of the policies and goals that underlie" the privilege." Id.

In this case, although Defendants may be correct that the process by which the President of the Selection Board selects the Sampled Master Brief Sheets does require deliberation, the sampling process itself is not the relevant deliberation for analysis. Defendants have asserted the deliberative process privilege not because they have an interest in protecting the sampling process, but because they seek to protect the promotion process.  Defs.' Opp'n at 15 ("[T]he sampled Master Brief Sheets are predecisional

---

[15]   Plaintiff does not seem to contest this.

because they are antecedent to any decision by the Navy regarding promotions.") (emphasis added).

The sampling process has no impact on the officer selection proceedings, and samples do not reveal anything more about the deliberative process than the current practice of releasing the names and basic statistical information of officers selected for promotion.  It would distort the purpose of the deliberative process privilege -- to protect the consultations that precede decisions on important legal or policy matters -- if tangential deliberations could be used as a bootstrap for withholding information that otherwise is not protected by the privilege.

Second, disclosing the samples will not inhibit dialogue or discourage candor at future Selection Board proceedings because they reveal no information about individual Board members and no substantial information about the content of the deliberations.

Third, Sampled Master Brief Sheets, like Master Brief Sheets, are not "memorandums or letters."  Therefore, like Master Brief Sheets, they are not protected by Exemption 5.

**C.  FOIA Exemption 6**

Defendants assert FOIA Exemption 6 as their third basis for withholding the requested information.  This Exemption permits an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The Supreme

Court has held that Exemption 6 was "intended to cover detailed Government records on an individual which can be identified as applying to that individual." Dep't of State v. Wash. Post Co., 456 U.S. 595, 602 (1982) (quoting H.R. Rep. No. 1497, 89th Cong., 2d Sess. 11) (internal quotation marks omitted).

Because the Exemption requires an agency to demonstrate that disclosure would be "clearly unwarranted," courts must "tilt the balance (of disclosure interests against privacy interests) in favor of disclosure." Morley, 508 F.3d at 1127 (quoting Wash. Post Co. v. Dep't of Health & Human Servs., 690 F.2d 252, 261 (D.C. Cir. 1982) (internal quotation marks omitted)). Such strong language creates a "heavy burden" for Defendants. Id. (quoting Wash. Post Co., 690 F.2d at 261). Under Exemption 6, "the presumption in favor of disclosure is as strong as can be found anywhere in [FOIA]." Id. (quoting Wash. Post Co., 690 F.2d at 261).

To succeed on a claim pursuant to Exemption 6, an agency must first identify a privacy interest. See Defs.' Opp'n at 23; Consumers' Checkbook, Ctr. for the Study of Servs. v. Dep't of Health and Human Servs., 554 F.3d 1046, 1051 (D.C. Cir. 2009) ("[P]hysicians have a substantial privacy interest in the total payments they receive from Medicare for covered services."); see also Judicial Watch, 449 F.3d at 153. If the requested information has no link to a specific individual, no privacy interest is implicated. Citizens for Envtl. Quality, Inc. v. Dep't of Agric.,

602 F. Supp. 534, 538 (D.D.C. 1984) (citing <u>Dep't of Air Force v. Rose</u>, 425 U.S. 352, 380 n.19 (1976)).   Once the agency has identified a privacy interest in withholding the information, it must then show that the asserted privacy interest outweighs "whatever public interest exists in having the names and addresses disclosed." <u>See</u> <u>Judicial Watch</u>, 449 F.3d at 153.

Here, Plaintiff requests only redacted information. <u>See</u> Defs.' Mot., Ex. C (in his FOIA request, Plaintiff states, "I wish to emphasize that I am not seeking personal identifiers of any of the records and anticipate that you will redact these identifiers."). Nonetheless, Defendants assert that "[d]espite plaintiff's proposed redactions, protected personal information would still be disclosed," including "the tabulated results of performance evaluations spanning the bulk of the subject officers' careers." Defs.' Opp'n at 24 & n.13.

In the absence of any "personal identifiers," it is highly unlikely -- if not impossible -- that disclosure would threaten an individual's privacy interests. Defendants have not shown that a citizen would be able to use the redacted Master Brief Sheets to identify any particular individual described. Therefore Defendants have not carried their "heavy" burden to show that disclosure would cause a "clearly unwarranted" invasion of privacy.

For this reason, Exemption 6 does not protect the requested information in this case.

## IV.  Conclusion

For the reasons set forth above, Defendants' Motion for Summary Judgment is **denied**, and Plaintiff's Cross-Motion for Summary Judgment is **granted.**   An Order shall accompany this Memorandum Opinion.


July 22, 2009                              /s/_____
                                          Gladys Kessler
                                          United States District Judge


**Copies to: Attorneys of record via ECF**